1

**LAW OFFICES OF ALLA V. VOROBETS**
Alla V. Vorobets, SBN 258586

2

*avorobets@vorobetslaw.com*
Celia R. Bernal, SBN 150063

3

*cbernal.vorobetslaw@gmail.com*
9270 Madison Avenue

4

Orangevale, CA 95662
Tel: (916) 966-8529

5

Fax: (916) 966-8527
Email: avorobets@vorobetslaw.com

6

7

Attorney for Defendants
TEACHBK, INC., ILYA KISELEV, and

8

ANDREI BURTSEV

9

10

11

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

12

13

| | |
|---|---|
| MIRIAM GOLDBERG, a/k/a Marina Sokolovskaya, | **Case No.: 3:24-cv-4525** |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| vs. | |
| TEACHBK, INC., ILYA KISELEV and ANDREI BUTSEV | **[Cal. Civ. Proc. Code § 425.16]** |
| Defendants. | **Date:     November 12, 2024** |
| | **Time:     10:30 a.m.** |
| | **Judge:    Hon. Lisa J. Cisneros** |
| | **Dept:     Courtroom G, 15th Floor** |
| | **Location:  San Francisco Courthouse** |
| | **450 Golden Gate Ave.,** |
| | **San Francisco, CA 94102** |
| | **Action Filed:  July 26, 2024** |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 12, 2024[1], at 10:30 a.m. or as soon thereafter as the matter may be heard in the above-entitled Court, Defendants TEACHBK, INC., ILYA KISELEV, and ANDREY BURTSEV (collectively, "Defendants") hereby bring for hearing, in courtroom G of the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, their Anti-SLAPP Motion to strike the Complaint filed by Plaintiff Miriam Goldberg, aka Marina Sokolovskaya ("Plaintiff").

Defendants specially move the Court to strike the Complaint pursuant to California Code of Civil Procedure ("CCP") §425.16, on the grounds Plaintiff's lawsuit is a strategic lawsuit against public participation aimed at chilling Defendants' right of petition or free speech in connection with issues relating to immigration, asylum and related litigation such that she must demonstrate a probability of prevailing on the merits which she cannot do.

Defendants expressly reserve, and do not waive, their right to (1) seek, by separate motion, an award of costs and attorneys' fees pursuant to CCP §425.16(c)[2] and/or (3) move to dismiss the complaint pursuant to any other permissible basis, including but not limited to, Federal Rules of Civil Procedure 11, 12 and/or 56.

This Anti-SLAPP Motion is based on this Notice, the supporting Memorandum Of Points and Authorities, Declarations of Ilya Kiselev with Exhibits 1-2, Andrei Burtsev, Pavel

---

[1] Cal.Civ.Pro. Code §425.16 (f) requires a hearing to be set within 30 days of filing the motion unless docket conditions of the court require a later hearing. The requirement under N.D. Cal. Civil Local Rule 7-2 that motions must be noticed for at least 35 days after a motion has been filed constitutes a docket condition justifying a later hearing. See *Ryan v. Editions Ltd. W., Inc., No.* C 06-4812 PVT, 2006 WL 3707894, at *1 (N.D. Cal. Dec. 14, 2006). In addition, the Standing Order for Civil Cases Before Judge Cisnero provides that motions may be noticed for any Tuesday (non-Criminal Duty month) at 10:30, consistent with the 35-day notice period in Local Rule 7-2(a). Thus, noticing a hearing on the instant motion for Tuesday, November 12, 2024 at 10:30 am is proper.

[2] Defendants intend to move for attorneys' fees and costs by noticed motion after resolution of this Anti-SLAPP Motion.  See, *Melbostad v. Fisher*, 165 Cal.App.4th 987, 992 (2008) ("In general, the party prevailing on a special motion to strike may seek an attorney fee award through three different avenues: simultaneously with litigating the special motion strike, by a subsequent noticed motion, or as part of the cost memorandum at the conclusion of the litigation.")

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

Ledestimminov, and Alla V. Vorobets with Exhibits 3-4, any Reply regarding this Motion, all pleadings and papers on file with the Court, and such oral and written evidence as may be presented at any hearing on this Motion or before the Motion is taken under submission by the Court.

DATED: October 7, 2024                    LAW OFFICES OF ALLA V. VOROBETS


_____
Alla V. Vorobets, Attorney for Defendants
TEACHBK, INC., ILYA KISELEV and
ANDREY BURTSEV

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

1

## **TABLE OF CONTENTS**

2 INTRODUCTION …………………………………………………………………1

3 BACKGROUND . ……………………………………………………………..……2

4 LEGAL DISCUSSION …………………..……………...…………………………4

5     A.   The Anti-SLAPP Statute ……………………………………………...…..4

    B.   Plaintiff's Claims Arise From Protected Activity ……….…………………..… 5

6

7         1.   The Challenged Statements Concern Matters of Public Interest ………..…..5

8             a.   The Issue of Asylum Is a Matter of Public Concern ..………………….6

9             b.   Warnings to Consumers Are of Public Interest ….………………..… 7

10         2.   Defendants' Alleged Comments Took Place In a Public Forum ..…………..8

11     C.   Plaintiff Cannot Demonstrate a Probability of Success ……….………………..9

12         1.   Constitutional and Statutory Protections Bar Plaintiff's Defamation Claims 10

13             a.   The Posts Are Protected By The Common Interest Privilege ………..…10

14             b.   The Posts Are Protected By The Fair Comment Privilege …………......11

15             c.   The Posts Are Protected By The Litigation And The *Noerr-Pennington*

16                Privileges ……………...………………………………………………..12

17         2.   Plaintiff Is a Public Figure ………………………………………….......13

18         3.   Plaintiff Must Show Actual Malice, Recklessness Or Even Negligence By

19            Defendants ………………..…………………………………………………..15

20         4.   As a Private Figure Plaintiff's Claims Still Fail Because Statements At Issue

21            Are Not Actionable ……..…...……………………………………………..17

22             a.   Defendants' Statements Are Not Actionable Opinion …………..……17

23             b.   The Challenged Statements Are Not "Of And Concerning" Plaintiff ..…18

24 CONCLUSION………………………………………………………..………….19

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>TABLE OF AUTHORITIES</u>**

**CASES**

*Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1241 (2007) …………11

*Baltty v. N.Y. Times Co.*, 42 Cal.3d 1033, 1042 (1986) ………………………….………1

*Baral v. Schnitt*, 1 Cal.5th 376, 392 (2016) …………..……………………………………9

*Barrett v. Rosenthal*, 40 Cal.4th 33, 41 n. 4 (2006) ………..…………….…………….....8

*Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003) …………………………………..…4

*Bently Reserve LP v. Papaliolios*, 218 Cal.App.4th 418, 425 (2103) ………..…………….…8

*Beroiz v. Wahl*, 84 Cal.App.4th 485, 494 (2000) ………………..………………….…...11

*Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1044 (1986) ……………………….…17

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005) …………………….....4

*Brewer v. Second Baptist Church*, 32 Cal.2d 791, 796-97 (1948) ………..………………10

*Carney v. Santa Cruz Women Against Rape*, 221 Cal.App.3d 1009, 1021 (1990) ……………6

*Carver v. Bonds*, 135 Cal.App.4th 328, 343-44 (2005) …………..…………………….....8, 17

*Chaker v. Mateo*, 209 Cal.App.4th 1138, 1146 (2012) …………..……………………….7

*City of Cotati v. Cashman*, 29 Cal.4th 69, 78 (2002) …………………………………….5

*Cochran v. NYP Holdings, Inc.*, 58 F.Supp. 2d 1113, 1123 (C.D. Cal. 1998) …………......…15

*Communications v. Connaughton*, 491 U.S. 657 (1989) ………………………..……….....16

*Connick v. Myers,* 461 U.S. 138, 148-149 (1983)……………………………………….7

*Copp v. Paxton*, 45 Cal.App.4th 829, 845 (1996) ……………………………...................14, 15

*Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495-96 (1975) …………………..…………..……11

*Cross v. Cooper*, 197 Cal.App.4th 357, 377 (2011) ……………..……………………….6

*Cuenca v. Safeway Employees Federal Credit Union,* 180 Cal.App.3d 985, 999 (1986)……….16

*Deaile v. General Telephone Co. of California*, 40 Cal.App.3d 841 (1974) ……………..…..10

*Dean v. Friends of Pine Meadow*, 21 Cal.App.5th 91, 108-109 (2018) …………………..……13

*Dun & Bradstreet v. Greenmoss Builders,* 472 U.S. 749, 762 (1985) ………..……………….7

*Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002) ………………….....4

*Evans v. Unkow*, 38 Cal.App.4th 1490, 1496–1498 (1995) ………..…..………………….9

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

*Gates v. Discovery Comm'ns, Inc.*, 34 Cal.4th 679, 692 (2004) …………………..………………11

*Gertz v. Welch*, 418 U.S. 323, 351 (1974) …………………..……………………………..……13

*Gilbert v. Sykes*, 147 Cal.App.4th 13, 23 (2007) ………………………………………...……5, 8, 9

*Green v. Cortez*, 151 Cal.App.3d 1068, 1074 (1984) …………………………………...………12

*Greenbelt Publ. Ass'n v. Bressler*, 398 U.S. 6, 13-14 (1970) …………………….…...……15

*Gregory v. McDonnell Douglas Corp.,* 17 Cal.3d 596, 601 (1976) ……………………………17

*Hailstone v. Martinez*, 169 Cal.App.4th 728, 740 (2008) ………………………………………11

*Hall v. Time Warner, Inc.* 153 Cal.App.4th 1337, 1347 (2007) …………………………………5, 9

*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 291 (2014) ...…………17

*Healthsmart Pacific, Inc. v. Kabateck*, 7 Cal.App.5th 416, 427 (2016) …………………..………11

*Hecimovick v. Encinal Sch. Parent Teacher Org.* 203 Cal.App.4th 450, 464 (2102) ……………5

*Hicks v. Richard*, 39 Cal.App.5th 1167, 1177 (2019) ………...……………………….....…10, 11

*Hilton v. Hallmark Cards*, 599 F.3d 894, 906 (9th Cir. 2010) ...………………………………6

*Howard v. Oakland Tribune*, 199 Cal.App.3d 1124, 1128 (1988) ………………...……………12

*Hui v. Sturbaum*, 222 Cal. App. 4th 1109, 1118-19 (2014) …………………………………10

*Industrial Waste & Debris Box Service, Inc. v. Murphy*, 4 Cal.App.5th 1135, 1158………...…9

*In re NCAA Sutdent-Athlete Name & Likeness Licensing Litig.,* 724 F.3d 1268, 1272 (9th Cir. 2013) ……………………………………………………………..………......4

*Jackson v. Mayweather,* 10 Cal.App.5th 1240, 1252 ………..……………………….....…8

*James v. San Jose Mercury News, Inc.*, 17 Cal.App.4th 1, 12 (1993) ……………………………17

*Kaufman v. Fid. Fed. Sav. & Loan Ass'n*, 140 Cal.App.3d 913 (1983) ………………..……15

*Katz v. Rosen*, 48 Cal.App.3d 1032, 1037 (1975) ………..……………………………..………10

*Ludwig v. Superior Court*, 37 Cal.App.4th 8, 21 (1995) …………………….…………………13

*Lundquist v. Reusser,* 7 Cal.4th 1193, 1212 (1994) …………………..…………..……………11, 15

*Macias v. Hartwell*, 55 Cal.App.4th 669, 675 (1997) ………..……………………………9

*Makaeff v.Trump Univ., LLC*, 715 F.3d 254, 262 (9th Cir. 2103) ………..………………………7

*Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 n.3 (9th Cir. 2017) ………..………………........8

*Mann v. Quality Old Time Service, Inc.*, 120 Cal.App.4th 90, 108 (2004) ………………..………10

CASE NO.3:24-cv-04525-LJC

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

*McClatchy Newsp., Inc. v. Superior Court*, 189 Cal.App.3d 961, 976-977 (1987) …………11, 12

*McGrory v. Applied Signal Technology, Inc.* 212 Cal.App.4th 1510, 1540 (2013) *Harte-Hanks*

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) …………………………….…………15

*Mosesian v. McClatchy Newspapers*, 233 Cal.App.3d 1685, 1689 (1991) ……………….......13

*Navellier v. Sletten*, 29 Cal.4th 82, 88-89 (2002) ……………………………….……….4, 5

*New York Times Co. v. Sullivan*, 376 U.S. 254, 285 (1964) ………..…………………..……9, 18

*Nicosia v. DeRooy*, 72 F.Supp.2d 1093 (N.D. Cal. 1999) …………..……………..……...…16

*Nygard, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1042 (2008) ……………….…..…5, 8, 15

*Old Dominion Letter Carriers v. Austin*, 418 U.S. 264, 285-286 (1974) ……………….……15

*Okun* v. *Superior Court*, 29 Cal.3d 442, 451 (1981) …………………………………….......14

*Partington v. Bugliosi*, 56 F.3d 1147, 1160-61 (9th Cir. 1995) ………………….……….…17

*Reader's Digest Assn. v. Superior Court*, 37 Cal.3d 244, 252 (1984) …………….............14, 15

*Resolute Forest Prods. v. Greenpeace Int'l*, 302 F.Supp.3d 1005 (N.D. Cal. 2017) ….…......16

*Rudnick v. McMillan*, 25 Cal.App.4th 1183, 1190 (1994) ……………….………….…..13, 14, 15

*Rivero v. Am. Fed'n of State, County, & Mun. Emps.*, 105 Cal.App.4th 913, 924 (2003)………..7

*Seelig v. Infinity Broad Corp.*, 97 Cal.App.4th 798, 810 (2002) ……………….……………8, 15

*Silberg*, 50 Cal.3d 205, 213 (1990) ……………………………….……………....…11, 12

*Sipple v. Fdn. For Nat. Progress*, 71 Cal.App.4th 226, 240 (1999) ……………….…..………11

*Solano v. Playgirl, Inc.*, 292 F.Supp.3d 1078 (9th Cir. 2002). ……………………….......16, 17

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935 (9th Cir. 2006) ……………..……………………13

*Summit Bank v. Rogers*, 206 Cal.App.4th 669, 696–701 (2012) ……………………….… …17

*Taus v. Loftus,* 40 Cal.4th 683, 714 (2007) ……………………………….…………….5, 8

*Tiedemann v. Superior Court*, 83 Cal.App.3d 918, 925 (1978) ……………….………..…….11

*United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999) …………………………………....….......................................…4

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003) ……………….…..…….4, 5

*Vogel v. Felice*, 127 Cal.App.4th 1006, 1017 n.3 (2005) …………..………………………..9

*Waldbaum* v. *Fairchild Publications, Inc.*, 627 F.2d 1287, 1297 (D.C. Cir. 1980) …………...15

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

*Wise v. Thrifty Payless, Inc.*, 83 Cal.App.4th 1296, 1302 (2000) ………………..………….....12

*Wilbanks v. Wolk*, 121 Cal.App.4th 883, 898 (2004) ………..…………………………….……8

*Wilson v. Parker, Covert & Chidester*, 28 Cal.4th 811, 821 (2002) ………………….……….5

**STATUTES**

8 U.S.C.S. §1158 …………………………………………………..…………6

Cal. Civ. Code §48………………………………………………..……………11

Cal. Civ. Code § 47 ……………..…………………………………………..…11, 12

Cal. Welf. & Inst. Code §13650 …………….……………………………….......1, 6

Cal.Civ.Pro. Code ("CCP") §425.16 ……………..……...................................……1, 4, 5, 8

**OTHER**

Article 14 of the Declaration of Human Rights………………..……………………………7

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

"[V]ulnerable noncitizens, asylees, and refugees are important to the fabric of our society." Cal. Welf. & Inst. Code §13650.  Plaintiff[1]'s lawsuit seeks to chill Defendants' exercise of free speech and right of petition regarding important issues of immigration and, therefore, constitutes an improper Strategic Lawsuit Against Public Participation. Cal.Civ.Pro. Code ("CCP") §425.16.

The entirety of the basis for Plaintiff's lawsuit is set out in the first paragraph of her Complaint.  According to Plaintiff, Defendants accuse her of (1) "being a Kremlin agent" and (2) sending "clients' personal information to the Russian government". Complaint, ¶1.  The 53 paragraphs of the "General Allegations" (paragraphs 11 through 63) do nothing more than expound upon these two basic allegations[2].  This paragraph also sets forth Defendants' sole motivation, according to Plaintiff: "to harm the reputation of their perceived competition."

Plaintiff's own Complaint admits that the video posts on the TeachBK YouTube channel collectively comment on the effects of:

    a.   Plaintiff's contacts with a well-known pro-Putin, Russian politician and professor of municipal law-making, Valeriy Katkov ("Katkov"), about Kiselev's residency in and application for political asylum in the U.S.;

    b.   Katkov's publication of an article in the pro-Putin publication he owns disparaging Kiselev's attempts to obtain political asylum in the U.S.;

    c.   Russian asylees' (Plaintiff's clients) reporting that their confidential information was being disseminated by Plaintiff to third parties.

---

[1] Defendants know Plaintiff only as Marina Sokolovskaya. IKD ¶12; ABD ¶18.  To avoid confusion, this Motion refers to her either as Plaintiff or Marina.

[2] To assist this Court with its analysis of Plaintiff's claims, Defendants provide a chart setting forth every paragraph of the complaint along with where it falls within these two categories.  AVV Dec. ¶¶ 6-7; **EX 4.** The chart also flags those statements that do not reference or refer to Plaintiff or are immaterial.  *See*, *Baltty v. N.Y. Times Co.*, 42 Cal.3d 1033, 1042 (1986) (To be actionable, allegedly defamatory statement "must specifically refer to, or be 'of and concerning,' the plaintiff in some way.")  The chart is not being submitted for the truth of the matters set forth therein, but rather as an aid for the Court's reference. AVV Dec ¶8.

Unhappy with the exposure, Plaintiff has sued Defendants for defamation in violation of California's Anti-SLAPP statute. CCP §425.16.

## II.        BACKGROUND

Ilya Kiselev ("Kiselev") and Andrei Burtsev ("Burtsev") attained admission to the United States after fleeing for their lives from political persecution in Russia. Declaration of Ilya Kiselev ("IKD") ¶3, **EX 3**; Declaration of Andrei Burtsev ("ABD") ¶4.

Prior to escaping Russia, Kiselev – a credentialed journalist and lawyer by training – was sued for defamation by Valeriy Katkov ("Katkov"), who has political connections to the present Russian government[3]. IKD ¶¶4-7. Thanks to the fearless defense of his legal counsel and the courage of an honest judge, Kiselev prevailed, and was vindicated, both in the underlying lawsuit *and* in the appeal that followed. IKD ¶7. However, as a result of his victory, Kiselev was forced to flee Russia, the judge was removed from her post by the Russian government and Kiselev's own attorney went into hiding. IKD ¶7. Defendant Burtsev, who also held credentials as a journalist before immigrating to the U.S. was also forced to feel Russia to escape persecution. ADB ¶5.

In an effort to help others avoid some of the difficulties they experienced, Burtsev and Kiselev joined forces and eventually founded TeachBK, Inc. a former Florida corporation[4]. IKD ¶9; ABD ¶8. Defendants created the TeachBK website to provide information about the process of immigrating to the United States (including via asylum) and later, when demand for their information became increasingly requested, a YouTube channel, Instagram, and a host of other social media accounts by the same moniker. IKD ¶¶9-10; ABD ¶12. The goal of Defendants' channel and accounts is to discuss current issues and trends related to the U.S. immigration system, post educational information on adaptation to life in the U.S., and conduct interviews

---

[3] Katkov, a pro-Putin Russian politician served as <NEED INPUT> from <date> to <date>. While he was removed from the position because of protests against his blatant misuse of his position, he remains an integral part of the pro-Putin propaganda machine in that, among other things, he owns and operates a Kremlin-approved propaganda publication and teaches law-making at the Moscow University. IKD ¶6; ABD ¶¶6-7. Katkov is not, and never has been, identified with the Opposition. *Id.*

[4] TeachBK, Inc. was originally incorporated in Florida and was properly dissolved shortly before Plaintiff filed her Complaint. TeachBK, Inc. was re-incorporated in California on August 30, 2024. ABD ¶10.

POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

with political, social, and community leaders of the Russian refugee diaspora in the U.S. and abroad.  IKD ¶10; ABD ¶13.  The majority of content posted on Defendants' accounts, however, centers on issues of immigration and petitioning for asylum by Russians who oppose the current Russian government to the U.S.  IKD ¶10; ABD ¶14.  Defendants enjoy the largest social media following of its kind in the U.S.  IKD ¶10; ABD ¶15.

Defendants began receiving concerning communications from asylees[5] (some still in Russia; others in the United States) that their personal information – including their present location – was getting back to the authorities in Russia placing them in grave danger of personal injury and/or death.  IKD ¶11; ABD ¶16.  Eventually, Defendants learned through asylum seekers they spoke with and/or interviewed on their YouTube channel that Plaintiff was connected to this information leak.  IKD ¶12; ABD ¶17; Declaration of Pavel Ledestimminov ("PLD").  However, Defendants had no personal interaction with Plaintiff until January of 2023 when she accused them of selling fake identification documents via their Telegram Channel.  IKD ¶12; ABD ¶19; Complaint 6: 6-10.

Shortly thereafter, Kiselev's Russian attorney told him: (1) Katkov had demanded the attorney sign a declaration that Kiselev is a "bad actor", (2) he was threatened by the Foreign Intelligence Service of the Russian Federation for his refusal to sign, and (3) Plaintiff was the source of Katkov's knowledge as to Kiselev's current whereabouts.  IKD ¶14, **EX**. **1** (Declaration of V.V. Andreev ("VAD").  After providing Kiselev with a declaration regarding these matters, the attorney went into hiding with his family and has not been heard from since.  IKD ¶14.

A month later, Katkov's Russian publication printed an article about Kiselev's request for asylum in the U.S., but that Plaintiff's "associates" are doing everything they can to ensure Kiselev is unsuccessful in his efforts.  IKD ¶15; **EX 2**.  These events prompted Defendants to relocate to California.  IKD ¶15; ABD ¶¶19-21.

---

[5] The term "asylee" or "asylum seeker" is used for ease of reference to refer to those persons attempting to relocate (regardless of method) to the United States from other countries located primarily in Eastern Europe.  For purposes of this lawsuit, this Motion focuses on Russian asylum seekers.

CASE NO.3:24-cv-04525-LJC

POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT

Plaintiff's own Complaint admits her contact with Katkov. Complaint ¶¶19, 28, 29, 31, 37 and 52.

### III.     LEGAL DISCUSSION

#### A.     The Anti-SLAPP Statute

Because this Court has diversity jurisdiction over Plaintiff's state-law claims, California's anti-SLAPP statute (motion and fee provisions) is "a substantive element of the state law a federal court is bound to apply." *United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999); *see also*, *Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003) (federal courts sitting in diversity "recognize[] the protection of the anti-SLAPP statute as a substantive immunity from suit.").

Section 425.16 provides in pertinent part as follows:

> A cause of action against a person arising from any act of that person in furtherance of that person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. CCP §425.16(b)(1).

The legislative purpose of CCP §425.16 is to provide a procedural device to defendants allowing for prompt exposure and dismissal of meritless and harassing claims that seek to chill the exercise of petitioning or free speech rights in connection with a public issue. *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005). The statute "is designed to discourage suits that 'masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so.'" *In re NCAA Sutdent-Athlete Name & Likeness Licensing Litig.,* 724 F.3d 1268, 1272 (9th Cir. 2013) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003)).

In considering an anti-SLAPP motion the courts employ a two-prong test: "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." CCP §425.16(b)(1); *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). If so, the burden shifts to plaintiff to show a probability of prevailing on the claim.

*Id.*  Meaning, Plaintiff must demonstrate that the complaint is *both* legally sufficient *and* supported by a prima facie showing of facts sufficient to sustain a favorable judgment.  *Navellier v. Sletten*, 29 Cal.4th 82, 88-89 (2002).  Defendants, however, "need not show that the plaintiff's suit was brought with the intention to chill the defendant's speech … [or] … that any speech was actually chilled." *Vess v. Ciba-Geigy*, 317 F.3d at 1110.

### B.   Plaintiff's Claims Arise from Protected Activity

A defendant meets its burden of establishing the anti-SLAPP statute is applicable by demonstrating the acts underlying Plaintiff's cause of action fit within one of the categories of CCP §425.16(e); *City of Cotati v. Cashman*, 29 Cal.4th 69, 78 (2002).

Section 425.16(e) identifies four categories of protected conduct, including: "(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  CCP §425.16(e)(3)-(4).

The "comments" Plaintiff complains of address an "issue of public interest" in a public forum and are "free speech in connection with a public issue."  CCP §425.16(e)(3) & (e)(4).  When Defendants establish these facts, the anti-SLAPP statute shifts the burden to Plaintiff to demonstrate she pleads a cause of action and has admissible evidence to prove it.  Otherwise, this special motion to strike must be granted.  CCP §425.16(b)(1); *see also*, *Taus v. Loftus,* 40 Cal.4th 683, 714 (2007); *Wilson v. Parker, Covert & Chidester*, 28 Cal.4th 811, 821 (2002).

### 1.   The Challenged Statements Concern Matters of Public Interest[6]

"[T]he question whether something is an issue of public interest must be 'construed broadly'" in order to safeguard free speech.  CCP §425.16(a); *Hecimovick v. Encinal Sch. Parent Teacher Org.* 203 Cal.App.4th 450, 464 (2102); *Gilbert v. Sykes*, 147 Cal.App.4th 13, 23 (2007).  "'[A]n issue of public interest' … *is an issue in which the public is interested.*"  *Nygard, Inc. v.*

---

[6] Because some courts use the terms "issue of public interest" and "the exercise of the constitutional right of free speech in connection with a public issue" interchangeably (*see e.g., Hall v. Time Warner, Inc.* 153 Cal.App.4th 1337, 1347 (2007)), Defendants will use "public interest" in this brief to refer to both for ease of discussion.)

POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

*Uusi-Kerttula*, 159 Cal.App.4th 1027, 1042 (2008) (emphasis in original).  The public's interest does not depend on whether the statements are true; the focus is on the broad topic addressed "rather than the specific accusation …"  *Carney v. Santa Cruz Women Against Rape*, 221 Cal.App.3d 1009, 1021 (1990).

Here, both of Plaintiff's causes of action are based on allegations that Defendants accused her of being a Kremlin agent who provided information about asylees (i.e., location of applicants, basis for asylum) to the Russian government.

Defendants have never labeled Plaintiff nor accused her of being a "Kremlin agent" or a "spy".  ABD ¶22; IKD ¶17.  However, Defendants have discussed the risk presented to asylees if their information made its way back to Russian authorities.  ABD ¶23; IKD ¶18.  In their YouTube interviews and conversations, Defendants posed questions and/or speculated and/or opined whether Plaintiff, among others, was a person who contributed to this risk, discussing the information provided by: (1) persons who had interacted with Plaintiff (2) Kiselev's Russian attorney (3) Deputy Katkov's newspaper article and (4) Plaintiff's own words on her public platforms.  ABD ¶24; IKD ¶¶16-18.

Defendants' comments/posts on which Plaintiff bases her defamation claims are matters of public interest on multiple grounds.

### a. The Issues Of Immigration And Asylum Are Matters Of Public Concern

Immigration, which encompasses asylees, refugees and others seeking entrance to the United States is a matter of public concern.  *See*, 8 U.S.C.S. §1158 ("Any alien who is physically present in the United States … may apply for asylum…"); Cal. Welf. & Inst. Code §13650 ("vulnerable noncitizens, asylees, and refugees are important to the fabric of our society[]"); Article 14 of the Declaration of Human Rights ("Everyone has the right to seek and to enjoy in other countries' asylum from persecution.").  Legislative findings and a statute addressing an issue demonstrate that it is a matter of public interest.  *Cross v. Cooper*, 197 Cal.App.4th 357, 377 (2011).

Courts interpreting the anti-SLAPP statute have concluded that issues of "public interest" include: (1) statements concerning a person or entity in the public eye; (2) conduct that could

directly affect a large number of people beyond the direct participants; (3) or a topic of widespread public interest.  *Hilton v. Hallmark Cards*, 599 F.3d 894, 906 (9th Cir. 2010) (quoting *Rivero v. Am. Fed'n of State, County, & Mun. Emps.*, 105 Cal.App.4th 913, 924 (2003).

Plaintiff qualifies as a person in the public eye because she claims to represent a law firm (Complaint at ¶¶ 2, 16, 62 (17:5)), created and appeared in a documentary (Complaint, ¶ 2), and has over 30,000 followers/subscribers on her social platforms.  ABD ¶26; IKD ¶13; AVV Dec., ¶ 8.  *See*, further discussion re Plaintiff as public figure in Section C2 below.

Furthermore, the challenged statements reflect attributes of a public issue in federal cases that have considered the issue including: (1) a subject concerning a substantial number of people; (2) a "closeness between the challenged statements and the asserted public interest"; and (3) Defendants' activities which are focused on the public interest.  *See*, *Dun & Bradstreet v. Greenmoss Builders,* 472 U.S. 749, 762 (1985); *Connick v. Myers,* 461 U.S. 138, 148-149 (1983).

Because the statements Plaintiff complains of relate to immigration or asylum, issues of public interest that affect a large number of people and as Plaintiff is, at least, a limited purpose public person, they fall within the anti-SLAPP statute's definition of protected activity.

### *b. Warnings To Consumers Are Of Public Interest*

The Ninth Circuit has concluded that "[u]nder California law, statements warning consumers of fraudulent or deceptive business practices constitute a topic of widespread public interest, so long as they are provided in the context of information helpful to consumers." *Makaeff v.Trump Univ., LLC*, 715 F.3d 254, 262 (9th Cir. 2103); *see also*, *Chaker v. Mateo*, 209 Cal.App.4th 1138, 1146 (2012) (warnings not to patronize a seller, are an exercise of free speech on a matter of public interest).  Here, Defendants advised consumers (asylum seekers like themselves) to be discerning in whom they shared their information with, which necessarily included warning them about people who are not careful with that information (referring to, i.e. the posting Plaintiff made on her public platform revealing the details concerning her "client"), and/or persons who allowed that information to reach the ears of the political machine in Russia. ABD ¶25; IKD ¶16.

[A] consumer's statements about the quality of a seller's products and service … concerned a matter of public interest.  Courts have recognized the importance of the public's access to consumer information.  The growth of "consumerism" in the United States is a matter of common knowledge.  Members of the public have recognized their roles as consumers and through concerted activities, both private and public, have attempted to improve their … positions vis-à-vis the supplie[r]s and manufacturers of consumer goods.  They clearly have an interest in matters which affect their roles as consumers, and peaceful activities, such as plaintiffs', which inform them about such matters are protected by the First Amendment.

*Wilbanks v. Wolk*, 121 Cal.App.4th 883, 898 (2004) (citations omitted).

Defendants' statements, as alleged by Plaintiff, are "consumer warning[s]" to persons with similar problems."  *Wilbanks v. Wolk,* 121 Cal.App.4th 883, 898; *Bently Reserve LP v. Papaliolios*, 218 Cal.App.4th 418, 425 (2103) (Yelp apartment review); *Gilberg, supra*, 147 Cal.App.4th at 23-24 (plastic surgery); *Carver v. Bonds*, 135 Cal.App.4th 328, 343-44 (2005) (doctor's credentials).

While consumer warnings, regardless of their subject matter, are a matter of public interest, as discussed above, the posts also address asylum and immigration – other matters of public interest.  The Court is entitled to determine the challenged statements and activities were protected. In addition, the challenged statements occurred in public forums.

## 2.  Defendants' Alleged Comments Took Place In Public Forums

Plaintiff alleges the subject statements were made on YouTube, the TeachBK website, and Instagram.  (See, e.g., Complaint, ¶¶5, 6, 12, 17,32, 42).  Those platforms are considered public forums for purposes of the anti-SLAPP statute. *See*, *e.g., Jackson v. Mayweather,* 10 Cal.App.5th 1240, 1252 (Defendant's "postings on his Facebook page and Instagram account made 'in a place open to the public or a public forum'"); *Nygard*, 159 Cal.App.4th at 1039 (websites accessible to public considered public forums) ; accord *Barrett v. Rosenthal*, 40 Cal.4th 33, 41 n. 4 (2006); *Wilbanks v. Wolk*, 121 Cal.App.4th 883, 897 (2004) ("Web, as a whole, can be analogized to a public bulletin board."); *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 n.3 (9th Cir. 2017) (posting photographs on websites accessible to public are statements made in a public forum (quoting *Barrett, 40* Cal.4th at 41 n.4, (2006)); See also *Seelig v. Infinity Broadcasting Corp.* 97 Cal.App.4th 798, 807 (2002) (statements during radio

interview public forum).

Because Defendants have established the posts involve matters of public interest and that they occurred in a public forum, it is Plaintiff's burden to show she pleads a cause of action. CCP§425.16(b)(1); *Taus v. Loftus*, 40 Cal.4th 683, 745 (2007).

### C.   <u>Plaintiff Cannot Demonstrate a Probability Of Success</u>

"The plaintiff's showing of facts must consist of evidence that would be admissible at trial." *Hall v. Time Warner, Inc.*, 153 Cal.App.4th 1337, 1346 (2007); *see also*, *Evans v. Unkow*, 38 Cal.App.4th 1490, 1496–1498 (1995).  Plaintiff cannot rely solely on the allegations set forth in the Complaint[7]; instead, she must present "competent and admissible evidence" showing she "probably" will prevail on her claim.  *Macias v. Hartwell*, 55 Cal.App.4th 669, 675 (1997).

Defamation claims must be pled with "specificity" and the plaintiff must "clearly and comprehensively specify the statements by which they claim to have been injured." *Gilbert v. Sykes*, 147 Cal.App.4th 13, 32 (2007); *Vogel v. Felice*, 127 Cal.App.4th 1006, 1017 n.3 (2005). Regardless of how pled, each statement alleged to be defamatory must be separately evaluated to assess whether constitutional or statutory defenses bar liability based on that statement. *E.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 285 (1964) (each statement must be reviewed to determine whether it is "of a character which the principles of the First Amendment... protect"); *Baral v. Schnitt*, 1 Cal.5th 376, 392 (2016) ("each separate defamatory statement gives rise to a new cause of action") (citations omitted).

As discussed below, the challenged statements/posts are subject to multiple privileges, including the common interest privilege, the fair comment privilege, and the litigation and the *Noerr-Pennington* privileges.   Furthermore, Defendants contend Plaintiff is, at least, a limited public figure.  Plaintiff bears an elevated burden of showing actual malice because (1) the statements fall within the common interest privilege and/or (2) she is a public figure.  Not only will Plaintiff be unable to demonstrate that Defendants acted with actual malice, she cannot even

---

[7] Pointed denials in pleadings are insufficient.  *Vogel v. Felice,* 127 Cal.App.4th 1006, 1021-22 (2005); *see also*, *Industrial Waste & Debris Box Service, Inc. v. Murphy*, 4 Cal.App.5th 1135, 1158 (a denial of one statement is not evidence to establish a prima facie case that another statement is false).

POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT

establish negligence or recklessness.

Furthermore, the fair comment and the litigation and/or *Noerr-Pennington* privileges completely bar Plaintiff's lawsuit as to posts that fall within their purview. Finally, some of the statements Plaintiff complains about constitute opinion or do not concern Plaintiff and, thus, cannot support defamation claims.

Since Plaintiff's claims are barred on multiple grounds, she cannot meet her legal burden, necessitating dismissal of the Complaint.  CCP §425.16(b)(1).

### 1.   Defendants' Posts are Privileged

Defamation requires Plaintiff prove (1) an intentional publication (2) that is false (3) defamatory (4) ***unprivileged*** and (5) that has a natural tendency to injure or that causes special damage.  *Taus v. Loftus*, *supra*, 40 Cal.4th at 720 (2007) Emphasis added.   The challenged statements are privileged for multiple reasons and, thus, cannot support a claim of defamation.

### a.   The Posts Are Protected By The Common Interest Privilege

The "common interest" privilege provides that "[a] privileged publication or broadcast is one made:…(c) [i]n a communication, without malice, to a person interested therein, . . . (1) by one who is also interested . . . or . . . (2) by one who stands in such a relation to the person interested…or… (3) who is requested by the person interested to give the information."  Cal. Civ.Code §47(c).  The privilege is recognized where the communicator and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further that interest. *Deaile v. General Telephone Co. of California*, 40 Cal.App.3d 841 (1974); *see also*, *Hui v. Sturbaum*, 222 Cal. App. 4th 1109, 1118-19 (2014); *see, e.g., Katz v. Rosen*, 48 Cal.App.3d 1032, 1037 (1975) (letter to bar association, which can be assumed to have interest in members' conduct); *Brewer v. Second Baptist Church*, 32 Cal.2d 791, 796-97 (1948) (statements to fellow church members); *Hicks v. Richard*, 39 Cal.App.5th 1167, 1177 (2019) (communications between parents of parochial school children and church authorities on subjects relating to the school).

The existence of the common interest privilege is ordinarily a question of law for the court.  *Mann v. Quality Old Time Service, Inc.*, 120 Cal.App.4th 90, 108 (2004).

POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

In the videos and posts Plaintiff complains about, Defendants were communicating with persons sharing a common interest in U.S. immigration and asylum issues – which Plaintiff concedes in her Complaint. Complaint, ¶¶5, 11-14, 49, 65, and 75.  As discussed below,

   To overcome the privilege, Plaintiff must submit admissible prima facie evidence that Defendants made statements with *actual malice* (i.e. were motivated by hatred or ill will *towards Plaintiff* or lacked reasonable grounds for believing their posts were true and thereby acted in reckless disregard of *Plaintiff's* rights). *See*, *Lundquist v. Reusser,* 7 Cal.4th 1193, 1212 (1994). Malice cannot be inferred from the communication itself.  Cal. Civ. Code §48; *see also*, *Hailstone v. Martinez*, 169 Cal.App.4th 728, 740 (2008).

Since, as discussed below, Plaintiff cannot establish actual malice, the common interest privilege is a complete defense to her lawsuit. *See*, *Hicks v. Richard*, 39 Cal.App.5th 1167, 1177 (2019).

### b.  The Posts Are Protected By The Fair Comment Privilege

The First and Fourteenth Amendments to the U.S. Constitution and Article I, §2 of the California Constitution provide an absolute privilege for accurate reporting about official records and proceedings.  *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495-96 (1975) (accurate report of court records absolutely protected); *Gates v. Discovery Comm'ns, Inc.*, 34 Cal.4th 679, 692 (2004) (absolute privilege applied to news report about obscure public court record).

In California, this privilege is codified in Cal. Civ. Code § 47(d) and provides absolute protection for "fair and true" reports about official proceedings and records, or anything said in the course thereof, to a public journal.  *Sipple v. Fdn. For Nat. Progress*, 71 Cal.App.4th 226, 240 (1999) (*Sipple*).  Moreover, "the section 47 privileges may properly shield conduct in" other countries.  *Beroiz v. Wahl*, 84 Cal.App.4th 485, 494 (2000).

"The principal purpose of [the litigation privilege] is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions."  *Silberg*, 50 Cal.3d 205, 213 (1990).  "In order to achieve this purpose of curtailing derivative lawsuits, [California courts] have given the litigation privilege a broad interpretation."  *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1241 (2007).

POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

Application of the privilege is a question of law.  *McClatchy Newsp., Inc. v. Superior Court*, 189 Cal.App.3d 961, 976-977 (1987).  Any doubts "are to be resolved in favor of a finding of privilege." *Tiedemann v. Superior Court*, 83 Cal.App.3d 918, 925 (1978); *Sipple*, *supra*, 71 Cal.App.4th at 240 (granting SLAPP motion based on privilege).  When it applies, the privilege is absolute (*Healthsmart Pacific, Inc. v. Kabateck*, 7 Cal.App.5th 416, 427 (2016)), regardless of its truth or falsity, and regardless of the defendant's motive for publishing it. *McClatchy*, *supra*, 189 Cal.App.3d at 974-75; *see also*, *Green v. Cortez*, 151 Cal.App.3d 1068, 1074 (1984) (malice "does not affect the determination of privilege"); *Howard v. Oakland Tribune*, 199 Cal.App.3d 1124, 1128 (1988) (privilege is not defeated by malice or abuse of author's "personal privilege").

Plaintiff admits she contacted Katkov, a Russian political figure in Moscow, to inquire about Kiselev's legal case(s).  Complaint, ¶¶ 19.  In response, in one of the posted videos, Defendants discussed the details of Kiselev's legal case in Russia, which was ongoing (at the appeal level) at the time of Plaintiff's inquiry.  ABD ¶27; IKD ¶16.  Defendants also discussed information received from Kiselev's own attorney that the latter was approached by Katkov during one of the court sessions in Russia, claiming that he had evidence – provided by Plaintiff - of wrongdoing by Kiselev in his asylum case in the U.S.  ABD ¶28; IKD ¶.  In another video, Defendants' commentary touched upon Plaintiff's work with other asylees – specifically details disclosed by an asylee about Plaintiff's conduct before and during their asylum hearings.  ABD ¶29; IKD ¶14.  These types of statements fall squarely within the broad scope of the fair comment privilege.  Plaintiffs' claims based on those statements must be stricken.

### c.  *The Posts Are Protected By The Litigation And The Noerr-Pennington Privileges*

Defendants' statements also come within the broad protection of the litigation privilege and the *Noerr-Pennington* doctrine – a complete bar to Plaintiff's lawsuit.

The "litigation privilege," set forth in Cal.Civ. Code §47(b) protects statements made in the course of judicial proceedings.  This section also creates a privilege for communications made "in any other official proceeding authorized by law." Cal.Civ. Code §47(b)(3).  The

privilege is absolute because it applies, if at all, regardless of whether the communication was made with malice or the intent to harm.  *Wise v. Thrifty Payless, Inc.*, 83 Cal.App.4th 1296, 1302 (2000).  For the absolute privilege to apply, the challenged communication must be logically related to the proceeding.  *Silberg v. Anderson*, 50 Cal.3d 205, 219-220 (1990).   Here, Defendants' allegedly defamatory comments had a direct relationship to Kiselev's and other Russian immigrants' asylum cases filed or pending before U.S. immigration courts.

Similarly, the *Noerr-Pennington* doctrine protects private parties from tort liability when they engage in the constitutional right to petition the government.  *Ludwig v. Superior Court*, 37 Cal.App.4th 8, 21 (1995).  "The *Noerr- Pennington* doctrine … preclude[s] virtually all civil liability for a defendant's petitioning activities before not just courts, but also before administrative and other governmental agencies."  *Dean v. Friends of Pine Meadow*, 21 Cal.App.5th 91, 108-109 (2018).  Even "communications between private parties are sufficiently within the protection of the Petition Clause to trigger the *Noerr-Pennington* doctrine, so long as they are sufficiently related to petitioning activity."  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935 (9th Cir. 2006).  Only "sham" activities—actions that lack a "genuine effort to influence government action" – are outside the reach of the *Noerr-Pennington* doctrine.  *Dean*, *supra*, 21 Cal.App.5th at 109.

Defendants' statements at issue are about: a) Kiselev's legal case in Russia; b) Kiselev's asylum case in the U.S.; and c) other asylees' immigration cases.  These statements directly address Defendants' and/or other asylees and/or Defendants' subscribers' petitioning activity, particularly in the U.S. immigration courts.  Because Defendants statements fit squarely within the litigation privilege and/or the *Noerr-Pennington*  privilege, it is now the plaintiff's burden to prove the sham exception in response to an anti-SLAPP motion – which she cannot do.  *Dean*, *supra*, 21 Cal.App.5th at 110.

### 2.  Plaintiff Is a Public Figure

A "public figure" is a person who "assume[s] special prominence in the resolution of public questions."  *Gertz v. Welch*, 418 U.S. 323, 351 (1974).  A plaintiff is a "general" public figure if that individual has achieved "pervasive fame or notoriety."  *Id.*  A not so famous person

may become a "public figure for a limited range of issues" (i.e., a "limited" public figure) only when the person either "voluntarily injects himself or is drawn into a particular public controversy." *Id.* "To qualify as a limited purpose public figure, a plaintiff 'must have undertaken some voluntary [affirmative] act[ion] through which he seeks to influence the resolution of the public issues involved.'" *Rudnick v. McMillan*, 25 Cal.App.4th 1183, 1190 (1994); *see also, Mosesian v. McClatchy Newspapers*, 233 Cal.App.3d 1685, 1689 (1991). It is not necessary to show that a plaintiff actually achieves prominence in the public debate; it is sufficient that "[a plaintiff] attempts to thrust himself into the public eye" (*Rudnick v. McMillan*, 25 Cal.App.4th 1183, 1190 (1994)) or to influence a public decision (*Okun* v. *Superior Court*, 29 Cal.3d 442, 451 (1981)). Whether a plaintiff in a defamation action is a public figure is a question of law for the trial court. *Reader's Digest Assn. v. Superior Court*, 37 Cal.3d 244, 252 (1984).

Plaintiff is, at minimum, a limited public figure under California law by virtue of her interjection into the public interest issues of immigration and search for missing persons, both of which are important issues within the Slavic refugee community that includes the ever-expanding subset of Russian political asylees. *See e.g.*, *Copp v. Paxton*, 45 Cal.App.4th 829, 845 (1996) (citing *Waldbaum* v. *Fairchild Publications, Inc.,* 627 F.2d 1287, 1297 (D.C. Cir. 1980) ("[i]f the issue was being debated publicly and if it had foreseeable and substantial ramifications for nonparticipants, it was a public controversy.").

The Complaint itself outlines Plaintiff's placement square within said public interest issues when it alleges, in relevant part:

> "She is the Development Director and Intake Manager for the New York office of Modern Law Group, a U.S.-based immigration law firm. As part of her business role, Ms. Goldberg posts YouTube videos and Instagram posts and reels discussing immigration matters based on topics decided by her employer. Ms. Goldberg works to help asylum seekers from the post-Soviet space, and in recent years has helped Russians and Ukrainians seek asylum here in the wake of the Russian invasion of Ukraine. She works with Russians who risk persecution at home for their anti-war beliefs and helps them flee persecution in the country that she now calls home.
> ..........

> In addition to her work with the Modern Law Group, Ms. Goldberg is also engaged in active volunteer efforts to help find missing persons.  Over the course of the last ten years, Ms. Goldberg has helped locate and identify more than 120 missing persons.  She also created a documentary film titled *Я не вернусь / I Won't Be Back* about those volunteer efforts."  Complaint, ¶ 2; *see also*, Complaint, ¶ 16 (5:22-23), ¶ 55 (15:27–16:1-2), ¶ 62 (17:5).

Plaintiff also runs a YouTube channel titled Политическое убежище в США - Иммиграция в США (translated by Google Translate as Political asylum in the USA - Immigration to the USA), which has over 30,000 subscribers.  AVV Dec., ¶ 9-10; https://www.youtube.com/@usaasylum.com.  Additionally, Plaintiff identifies herself as a blogger and journalist in at least one Russian-language magazine on topics of immigration.  AVV Dec., ¶11; https://www.forumdaily.com/en/author/marina_sokolovskaya/.

In other words, Plaintiff not only holds herself out as an expert on immigration and missing person issues that are of concern to the Slavic/post-Soviet diaspora in the U.S., but is also prolific in putting out content on those issues for public consumption.  *Copp v. Paxton*, 45 Cal.App.4th 829 (1996) (president of two corporations that opposed rezoning issues affecting his property); *Kaufman v. Fid. Fed. Sav. & Loan Ass'n*, 140 Cal.App.3d 913 (1983) (self-proclaimed expert in earthquake safety).

For public figures, there is an additional requirement to show that the defamatory statement was made with actual malice, meaning with knowledge that it was false or with reckless disregard for whether it was false.  *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1048 (2008).  "The rationale for imposing this burden on a public figure in an action for defamation lies in large measure in the 'consideration that public figures are less deserving of protection than private persons because public figures, like public officials, have `voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them.'"  *Reader's Digest Assn.* v. *Superior Court*, 37 Cal.3d 244, 253 (1984)

### 3. Plaintiff Cannot Show Actual Malice, Recklessness Or Even Negligence By Defendants

POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT

To overcome the common interest privilege and/or her status as a public figure and demonstrate the required probability of prevailing at trial, Plaintiff must show Defendants acted with actual malice toward her.  See, *Lundquist v. Reusser,* 7 Cal.4th 1193, 1212 (1994) (actual malice required to defeat common interest privilege); *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1048 (2008) (public figure required to show actual malice).

Plaintiff alleges that Defendants knew the statements were false and intended to harm her, which, without more, is insufficient to show malice on the part of Defendants.  Rather, Plaintiff must show Defendants made statements they either did not believe to be true (*i.e.,* they actually knew better) or unreasonably believed to be true (*ie.,* they should have known better), leaving it up to the fact finder to ascertain what Defendants *subjectively knew and believed about the topic at the time they spoke.  McGrory v. Applied Signal Technology, Inc.* 212 Cal.App.4th 1510, 1540 (2013) (*emphasis added*).  Stated another way, Plaintiff must produce "evidence that no reasonable person could have believed…" the information in Defendants' possession that formed the basis of their ultimate statement.  *Id.* at 1541.  Plaintiff cannot make this showing.

First, Defendants had no hatred or ill will toward Plaintiff when they allegedly made the challenged statements.  ABD ¶30; IKD ¶24.

Second, what statements Defendants did make, were said in good faith and on the basis of the information provided by (a) Defendant Kiselev's attorney in Russia, (b) Katkov in his publication, and (c) other political asylees' who interacted with Plaintiff or (d) gleaned from Plaintiff's own postings.  ABD ¶31; IKD ¶18.  Clearly, Defendants had reasonable grounds for believing their statements to be true.  *See*, *Cuenca v. Safeway Employees Federal Credit Union,* 180 Cal.App.3d 985, 999 (1986).

Third, in making their posts, Defendants acted to protect others, not to harm Plaintiff.  ABD ¶33; IKD ¶20.  Specifically, Defendants' posts are aimed at protecting an already vulnerable population of Russian political asylees from perceived harm they often encounter after departure from Russia and once when arrive in the U.S.  ABD ¶34; IKD ¶21.  The crux of Defendants' posts was a call to their subscribers –consisting mostly of recent refugees fleeing the

Russian regime and coming to the U.S. – to exercise caution during various phases of the immigration process (i.e. travel, border crossing, and asylum petition).  ABD ¶35; IKD ¶22.

Plaintiff's allegations that Defendants' statements were undertaken as a means of gaining a competitive and/or commercial advantage over Plaintiff, are likewise unavailing.  Complaint, ¶¶15, ¶62 (17:3-5).  A desire for commercial gain is not sufficient to show actual malice; a showing of something more than just a profit motive or ill will is required.  *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657 (1989); *Nicosia v. DeRooy*, 72 F.Supp.2d 1093 (N.D. Cal. 1999); *Resolute Forest Prods. v. Greenpeace Int'l*, 302 F.Supp.3d 1005 (N.D. Cal. 2017).  Reckless conduct must show a high degree of awareness of probable falsity or serious doubts as to the truth of the publication to demonstrate actual malice.  *Solano v. Playgirl, Inc.*, 292 F.Supp.3d 1078 (9th Cir. 2002).  A desire for commercial gain does not alone meet the threshold for actual malice under California law.  Plaintiff cannot make a showing of actual malice on Defendants' part in making the subject statements.

Plaintiff cannot show Defendants acted with negligence, much less with recklessness or malice. Her Complaint must be stricken.

**4.   As a Private Figure, Plaintiff's Claims Still Fail Because Subject Statements Are Not Actionable**

Even if, assuming *arguendo*, the Court moves past the privileged nature of the comments and deems Plaintiff to be a private figure for purposes of this Motion, Plaintiff's claims still fail. The statements at issue are not actionable as defamation because they are subject to several defenses.

*a.   The Challenged Statements Are Defendants' Opinions*

Statements of opinion are not actionable.  A "statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection."  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990).  There can be no liability for "statements of the speaker's subjective judgment."  *Seelig v. Infinity Broad Corp.*,

97 Cal.App.4th 798, 810 (2002)[8]. The court must evaluate "the facts surrounding the publication, the nature and full content of the statement and the knowledge and understanding of the audience to whom the publication was directed." *Rudnick v. McMillan*, 25 Cal.App.4th 1183, 1191 (1994). Presentations that signal their subjective nature to readers are constitutionally protected. *Cochran v. NYP Holdings, Inc.*, 58 F.Supp. 2d 1113, 1123 (C.D. Cal. 1998). Even hostile criticism is constitutionally protected. *Old Dominion Letter Carriers v. Austin*, 418 U.S. 264, 285-286 (1974) (labeling "scabs" as "traitors" was held to be nonactionable opinion); *Greenbelt Publ. Ass'n v. Bressler*, 398 U.S. 6, 13-14 (1970) (statement accusing plaintiff of "blackmail" was "no more than rhetorical hyperbole").

In this case, any statements actually made by Defendants—e.g., the statements that Plaintiff contacted a Russian politician about Kiselev and/or has disseminated information about a Russian refugee seeking political asylum in the U.S. – were either truthful assertions of fact or non-actionable statements of opinion. *See generally*, ABD ¶36; IKD ¶23. For example, Plaintiff admits she made contact with Katkov in Russia to inquire about Kiselev. Complaint, ¶19. This was confirmed by Kiselev through his Russian attorney. IKD ¶14. Plaintiff cannot base her claims on such non-actionable statements. *See*, *Carver v. Bonds*, 135 Cal.App.4th 328, 347-48 (2005) (affirming grant of anti-SLAPP motion; plaintiff failed to provide admissible evidence that defendants made "provably false assertions of fact").

The remainder of the challenged statements are likewise reflective of Defendants' subjective view on the issues under discussion. Even a cursory review of the Complaint makes this patently obvious – many of the quotes cited by the Plaintiff in the Complaint show Defendants discussing the issue in the form of questions, hyperbole, subjective surmise of thoughts, etc. See, e.g., Complaint, ¶¶ 24-26. California law is clear on this point – a hodge-

---

[8] *See*, *Summit Bank v. Rogers*, 206 Cal.App.4th 669, 696–701 (2012) (holding statements that a bank was a "problem bank," that the CEO was misappropriating money, and that bank was on verge of insolvency were "nonactionable statements of opinion, rather than verifiable statements of fact"); *James v. San Jose Mercury News, Inc.*, 17 Cal.App.4th 1, 12 (1993) (article describing lawyer as engaging in "sleazy, illegal, and unethical practice" fell into "protected zone of '"imaginative expression"' or '"rhetorical hyperbole"'"); *Partington v. Bugliosi*, 56 F.3d 1147, 1160-61 (9th Cir. 1995) (criticizing a lawyer for "represent[ing] his client poorly" constituted nonactionable opinion).

POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

1  podge of rhetoric, hyperbole and opinion cannot serve as a basis for defamation.  *See*, *Gregory v.*
2  *McDonnell Douglas Corp.,* 17 Cal.3d 596, 601 (1976).

### b.  The Challenged Statements Are Not "Of And Concerning" Plaintiff

4  It is axiomatic that defamation plaintiffs must show that the allegedly false statements or
5  implications are "of and concerning" them specifically.  *See, e.g.*, *New York Times*, 316 U.S. at
6  288; *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 291 (2014) ("under
7  the First Amendment ... all injurious falsehoods must specifically refer to, or be 'of and
8  concerning,' the plaintiff in some way") (quotation omitted). As the California Supreme Court
9  has explained, the "'of and concerning' or specific reference requirement limits the right of
10  action for injurious falsehood, granting it to those who are the direct object of criticism and
11  denying it to those who merely complain of nonspecific statements that they believe cause them
12  some hurt."  *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1044 (1986) (quotation omitted).

13  Plaintiff's Complaint does not abide by this constitutional mandate.  Plaintiff routinely
14  pleads her employer (Modern Law Group) (Complaint, ¶¶ 2, 16, 57, 62) and/or her associate
15  Kateryna Panova (Complaint, ¶ 16) as being effected by Defendants' alleged statements.  In
16  doing so, Plaintiff is appropriating the apparent claims of those entities/persons, without any
17  effort to distinguish statements directed at, of, or affecting Plaintiff.  As a result, the Court should
18  strike claims that are not "of and concerning" Plaintiff.

### IV.    CONCLUSION

20  The posts, statements and acts Plaintiff complains of concern issues of public interest that
21  took place in public forums and, therefore, fall within the category of publications subject to
22  California's anti-SLAPP statute.  Therefore, unless Plaintiff can show "that there is a probability
23  [she] will prevail on the claim", her Complaint must be stricken.  CCP §425.16

24  Plaintiff cannot meet this legal and factual burden because the challenged statements:

25  1.    are privileged under the fair comment doctrine and/or the litigation and the *Noerr-*
26        *Pennington* doctrines and, thus, a complete bar to Plaintiff's complaint.  In addition,
27        because Plaintiff is a public figure;

2.    fall within the common interest privilege requiring proof of actual malice which Plaintiff cannot show;

3.    are made regarding a public figure (Plaintiff) requiring proof of actual malice which Plaintiff cannot show;

    a.    constitute non-actionable opinion and/or

    b.    were not made of or concerning Plaintiff.

Defendants posts concerned issues of public concern and reflected information provided to them that they reasonably believed to be true.  Plaintiff's claims against them based upon such statements fail for a host of reasons such that the Complaint must be stricken.

DATED: October 7, 2024          LAW OFFICES OF ALLA V. VOROBETS

Alla V. Vorobets, Attorney for Defendants
TEACHBK, INC., ILYA KISELEV and
ANDREY BURTSEV

POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE
PLAINTIFF'S COMPLAINT