**LAW OFFICES OF ALLA V. VOROBETS**
Alla V. Vorobets, SBN 258586
*avorobets@vorobetslaw.com*
Celia R. Bernal, SBN 150063
*cbernal.vorobetslaw@gmail.com*
9270 Madison Avenue
Orangevale, CA 95662
Tel: (916) 966-8529
Fax: (916) 966-8527
Email: avorobets@vorobetslaw.com

Attorney for Defendants
TEACHBK, INC., ILYA KISELEV, and
ANDREI BURTSEV

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIRIAM GOLDBERG, a/k/a Marina Sokolovskaya,<br><br>   Plaintiff,<br><br>vs.<br><br>TEACHBK, INC., ILYA KISELEV and ANDREI BUTSEV<br><br>   Defendants. | **Case No.: 3:24-cv-4525**<br><br>**DECLARATION OF ALLA V. VOROBETS IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT**<br><br>**[Cal. Civ. Proc. Code § 425.16]**<br><br>**Date:  November 12, 2024**<br>**Time:  10:30 a.m.**<br>**Judge:  Hon. Lisa J. Cisneros**<br>**Dept:  Courtroom G, 15th Floor**<br>**Location: San Francisco Courthouse**<br>**     450 Golden Gate Ave.,**<br>**     San Francisco, CA 94102**<br><br>**Action Filed:  July 26, 2024** |

DECLARATION OF ALLA V. VOROBETS IN SUPPORT OF
DEFENDANTS' SPECIAL MOTION TO STRIKE

I, ALLA V. VOROBETS, declare:

1.     I am an attorney at law duly licensed to practice before all courts of the State of California and am admitted to practice before the United States District Court, Northern District of California.

2.     I am counsel of record for Defendants TeachBK, Inc., Ilya Kiseleva and Andrei Burtsev (Collectively "Defendants") in the above-referenced matter.

3.     This declaration is submitted in support of Defendants' Special Motion to Strike Plaintiff's Complaint pursuant to Cal.Civ.Pro. Code §425.16.

4.     I have personal knowledge of the facts set forth in this declaration and if called as a witness, I can and will testify to the truth of the matters set forth herein.

5.     Pursuant to The Hon. Lisa J. Cisneros' Standing Order, I met and conferred with counsel for Plaintiff, James M. Slater, by calling and, when unable to reach him, sending an email on October 4, 2024.  While Mr. Slater and I were unable to confer via telephone, we exchanged several emails in which I set forth the basis for this motion.  A true and correct copy of the email exchange is attached hereto as **Exhibit A**.  The parties were unable to reach agreement as to the issues.

6.     To assist this Court with its analysis of Plaintiff's claims, Defendants provide a chart setting forth every paragraph of the complaint along with where it falls within these two categories.  The chart is attached hereto as **Exhibit B**.

7.     The chart also flags those statements that do not reference or refer to Plaintiff or are immaterial.  The chart is not being submitted for the truth of the matters set forth therein, but rather as an aid for the Court's reference.

8.     I personally reviewed Plaintiff's public social media platforms and discovered that she has over 30,000 followers/subscribers on her YouTube channel, alone.

9.     Plaintiff's YouTube channel located at https://www.youtube.com/@usaasylum.com is titled Политическое убежище в США - Иммиграция в США (translated by Google Translate as Political asylum in the USA - Immigration to the USA).

10.    While I have provided the Court with the Google translation of the title of

DECLARATION OF ALLA V. VOROBETS IN SUPPORT OF
DEFENDANTS' SPECIAL MOTION TO STRIKE

1    Plaintiff's YouTube, I know the title to be accurate because I am fluent in both Russian and
2    English.
3        11.    Additionally, Plaintiff identifies herself as a blogger and journalist in at least one
4    Russian-language magazine (https://www.forumdaily.com/en/author/marina_sokolovskaya/) on
5    topics of immigration.
6        I declare under penalty of perjury under the laws of the United States and California that
7    the foregoing is true and correct and that this declaration was executed in Orangevale, California
8    on October 7, 2024.
9
10
11                                   Alla V. Vorobets
                                     Attorney for Defendants
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3

| | |
|---|---|
| **From:** | Alla Vorobets <avorobets@vorobetslaw.com> |
| **Sent:** | Friday, October 4, 2024 12:50 PM |
| **To:** | James M. Slater |
| **Cc:** | Ethan Jacobs; Celia Bernal |
| **Subject:** | Re: Meet and confer re anti-SLAPP |

James,

Fair enough.

First, the burden of establishing a probability of Plaintiff's claims would be on the Plaintiff.

Second, Plaintiff would not be able to meet her burden because, among other things:

- Defendants' alleged statements are subject to an absolute privilege under Cal. Civ. Code §47
- Plaintiff is a public figure - must show Defendants acted with actual malice, which she cannot do
- Even if Plaintiff is private figure - must show Defendants' alleged statements are not true, which she cannot do
- Defendants' alleged statements are subjective statements not capable of being proven as true or false
- Defendants' alleged statements do not relay defamatory meaning
- Defendants' alleged statements are satire

Again, I am requesting that you dismiss Plaintiff's claims in their entirety.


--
With kind regards,

Alla V. Vorobets
Attorney at Law

**_Please note our new address:_**
LAW OFFICES OF ALLA V. VOROBETS
9270 Madison Avenue
Orangevale, CA 95662
(916) 966-8529 (VLAW)
(916) 966-8527 Fax
www.vorobetslaw.com

CONFIDENTIALITY NOTE: The information contained in this email is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you

have received this email in error, please notify us immediately by telephone, and permanently delete this email. Thank you.


On Fri, Oct 4, 2024 at 12:09 PM James M. Slater <james@slater.legal> wrote:
Alla,

You haven't explained why the Plaintiff does not have a probability of prevailing on her defamation claims, in which your clients accused Plaintiff of being a Russian spy and leaking client information to the Russian government, among other things.  On that basis, the motion would be frivolous. If you file the motion, we will seek our fees for filing a frivolous anti-SLAPP motion.

Best,
James


**James Slater**

Slater Legal PLLC

[slater.legal](slater.legal)


Atlanta Office/Mailing Address

2296 Henderson Mill Rd. N.E. #116

Atlanta, GA 30345

Tel. (404) 458-7283


Tallahassee Office

113 S. Monroe Street

Tallahassee, FL 32301


On Fri, Oct 4, 2024 at 3:02 PM Alla Vorobets <avorobets@vorobetslaw.com> wrote:
James,

My anti-SLAPP motion is due for filing on Monday, 10/7/2024.

The motion will be brought under Cal. Civ. Proc. Code §425.16 as a a special motion to strike.

The motion will be brought on the basis that Plaintiff's claims arise out of Defendants' activity in furtherance of each of their exercise of the right of free speech in connection with issues of public interest and/or exercise of Defendants Kiselev and Burtsev's exercise of right of petition.

An order granting the special motion to strike will dismiss the applicable claims. If the court grants the motion, the defendant is entitled to an award of attorneys fees.

I am requesting that you dismiss Plaintiff's claims in their entirety.

Thank you.
--
With kind regards,

Alla V. Vorobets
Attorney at Law

**_Please note our new address:_**
LAW OFFICES OF ALLA V. VOROBETS
9270 Madison Avenue
Orangevale, CA 95662
(916) 966-8529 (VLAW)
(916) 966-8527 Fax
www.vorobetslaw.com

CONFIDENTIALITY NOTE: The information contained in this email is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this email in error, please notify us immediately by telephone, and permanently delete this email. Thank you.


On Fri, Oct 4, 2024 at 11:33 AM James M. Slater <james@slater.legal> wrote:
  Alla,

  I am out today and in a deposition all day Monday. Could we talk on Tuesday?

  What is the basis for your anti-SLAPP motion?

  James


  **James Slater**

  Slater Legal PLLC

  slater.legal

<u>Atlanta Office/Mailing Address</u>

2296 Henderson Mill Rd. N.E. #116

Atlanta, GA 30345

Tel. (404) 458-7283


<u>Tallahassee Office</u>

113 S. Monroe Street

Tallahassee, FL 32301


On Fri, Oct 4, 2024 at 2:27 PM Alla Vorobets <[avorobets@vorobetslaw.com](mailto:avorobets@vorobetslaw.com)> wrote:
Hi James,

I just called your office and left a voicemail.

I would like to speak with you in the next few days to meet and confer regarding an anti-SLAPP motion Defendants plan on filing.

Please give me a call back at (916) 966-8529 or (916) 903-4579 (cell) at your earliest convenience.

Thank you.

--
With kind regards,

Alla V. Vorobets
Attorney at Law

***Please note our new address:***
LAW OFFICES OF ALLA V. VOROBETS
9270 Madison Avenue
Orangevale, CA 95662
(916) 966-8529 (VLAW)
(916) 966-8527 Fax
[www.vorobetslaw.com](http://www.vorobetslaw.com)

CONFIDENTIALITY NOTE: The information contained in this email is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this email in error, please notify us immediately by telephone, and permanently delete this email. Thank you.

# EXHIBIT 4

| ¶ | Complaint | |
|---|---|---|
| 1. | This is a defamation action by Ms. Goldberg against Defendants based on their online campaign of lies accusing Ms. Goldberg - the marketing director for a U.S. immigration law firm that assists Russian asylum seekers - of being a Kremlin agent who sends clients' personal information to the Russian government, among other lies. Defendants, who provide their own services to Russian asylum seekers, engaged in this campaign to harm the reputation of their perceived competition. | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS<br>• "[A]ccusing … Goldberg … of being a Kremlin agent"<br>• "[S]ends clients' personal information to the Russian government,"<br><br>DEFENDANTS' MOTIVATION PER PLAINTIFF<br>•"to harm the reputation of their perceived competition." |
| 2. | Plaintiff Miriam Goldberg is a Russian emigre—who came to the United States because of her opposition to Russian President Vladimir Putin—and U.S. citizen who resides in Brooklyn, New York. Ms. Goldberg is known professionally as Marina Sokolovskaya, which borrows from her birth name and her grandmother's surname. She is the Development Director and Intake Manager for the New York office of Modern Law Group, a U.S.-based immigration law firm. As part of her business role, Ms. Goldberg posts YouTube videos and Instagram posts and reels discussing immigration matters based on topics decided by her employer. Ms. Goldberg works to help asylum seekers from the post-Soviet space, and in recent years has helped Russians and Ukrainians seek asylum here in the wake of the Russian invasion of Ukraine. She works with Russians who risk persecution at home for their anti-war beliefs and helps them flee persecution in the country that she now calls home. As Defendants know based on their prior representations, Ms. Goldberg is not an agent of the Kremlin or the Russian government. To suggest that she has any support for or connection with the Russian government is false, defamatory, and personally hurtful to her and the hard work she does to help asylum seekers. In addition to her work with the Modern Law Group, Ms. Goldberg is also engaged in active volunteer efforts to help find missing persons. Over the course of the last ten years, Ms. Goldberg has helped locate and identify more than 120 missing persons. She also created a documentary film titled Я не вернусь /I Won't | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS<br>"…suggest that she has … support for or connection with the Russian government"<br><br>ADMISSION<br>Plaintiff is a public figure<br>• "posts YouTube videos and Instagram posts and reels discussing immigration matters based on topics decided by her employer."<br>• "She also created a documentary film titled Я не вернусь /I Won't Be Back" |

| | | |
|---|---|---|
| | Be Back about those volunteer efforts. For purposes of this action, she is a private figure. | |
| 3. | On information and belief, Defendant Ilya Kiselev is an individual who resides in Mountain View, California. | |
| 4. | On information and belief, Defendant Andrei Burtsev is an individual who resides in Rocklin, California. At all times material to the allegations in the Complaint, he resided and conducted business in Mountain View, California. | |
| 5. | Defendants Kiselev and Burtsev collectively run and administer (1) the YouTube channel "TeachBK - Immigration" located at https://www.youtube.com/@TeachBK (the "YouTube Channel"), (2) various Telegram channels, and (3) the website teachbk.com, on which they offer help to Russians who are seeking to move to the United States. Their website provides information on travel to Mexico, purchasing vehicles, preparing for asylum interviews, and recommendations to the two U.S.-based immigration lawyers who often appear on the YouTube Channel. Defendants Kiselev and Burtsev incorporated this venture as TeachBK, Inc. | ADMISSION<br>Defendants' activities concern assistance / activism on behalf of asylees/ émigrés. |
| 6. | Defendant TeachBK, Inc. is a dissolved Florida profit corporation, with its principal offices in Hallandale Beach, Florida and Mountain View, California. Defendants Burtsev and Kiselev were TeachBK, Inc.'s sole owners and shareholders. Although they dissolved the corporation on June 28, 2024, they continue to administer the YouTube Channel, social media, and website under the "TeachBK" moniker post-dissolution. | |
| 7. | This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332. There exists complete diversity between the parties, as Ms. Goldberg is a resident of New York, Defendants Kiselev and Burtsev are residents of California, and Defendant TeachBK's residence (Florida and California) is disregarded as a former entity. The amount in controversy at issue in this matter exceeds $75,000. | |

| | | |
|---|---|---|
| 8. | This Court has personal jurisdiction over Defendants and venue is proper in the Northern District of California under 28 U.S.C. §1391(b) because Defendant Kiselev resides in this District and Defendants' wrongful acts alleged herein occurred in this District. | |
| 9. | Prior to filing suit, Ms. Goldberg, through counsel, issued a retraction letter to Defendants, who failed to retract any of the statements, images or videos at issue here. | |
| 10. | Pursuant to Civil Local Rule 3-2(d), this diversity action shall be assigned to the San Jose Division, as a substantial part of the events or omissions giving rise to the claim occurred within Santa Clara County, such that the claims arise therefrom. | |
| 11. | In October 2020, Defendants created the <teachbk.com> domain and website, and several months later, in February 2021, they launched their YouTube Channel. On their website, YouTube Channel, and Telegram, Defendants explain that they provide immigration services - "Assistance in protecting the right to political asylum. Immigration to the USA" - although neither Kiselev nor Burtsev are licensed attorneys. They promote asylum as a visa-less option to relocation in the United States. | ADMISSION<br>Defendants' activities concern assistance / activism on behalf of asylees/ émigrés. |
| 12. | Instead, they provide a series of ancillary services to Russians who are seeking to immigrate to the United States. Defendants have used their website, YouTube Channel, Telegram, and other social media to encourage Russian asylum seekers to purchase packages where Defendants help arrange flights from Dubai to Mexico, the purchase of vehicles in Mexico to cross the border into the United States, assistance on "how to get in" to the United States from abroad, as well as with assistance in preparing for asylum proceedings. | ADMISSION<br>Defendants' activities concern assistance / activism on behalf of asylees/ émigrés. |
| 13. | Because neither Kiselev nor Burtsev is an attorney, they refer their customers to the lawyers their website lists as "recommendations" for services that they cannot | ADMISSION<br>Defendants' activities concern assistance / activism on behalf of asylees/ émigrés. |

|  | provide, like appearing in immigration court. However, according to their website, Defendants provide a series of services that are legal in nature. For example, Defendants help their clients prepare for interviews with immigration officials. According to a WhatsApp voice memo authored by Kiselev, Defendants also help their clients compile their case for an asylum application by telling them "what has to be in it, what falls under a category and what doesn't." They claim they "help shape [the client's] narrative" for 15,000 Rubles, but that the consultation "does not constitute a legal consultation in the United States." Defendants also offer "asylum preparation" which includes a legal assessment of the case's strengths and weaknesses for 28,000 Rubles. Again, Defendants caution with an asterisk that this package - to provide a "legal assessment" - is not a legal consultation. Defendants also provide a comprehensive package for 50,000 Rubles, which helps clients understand their legal case and help assess how to purchase tickets and what to do at the border and after crossing. They provide the same disclaimer that they are not providing a legal service. |  |
|---|---|---|
| 14. | Since the creation of the YouTube Channel, Defendants have posted more than 1,000 videos. The videos are in Russian and discuss immigration to the United States, often featuring the two lawyers Defendants promote on their website for immigration services - Alex Tovarian and Raisa Stepanova. They have more than 100,000 followers and nine million views. | ADMISSION<br>Defendants' activities concern assistance / activism on behalf of asylees/ émigrés.<br><br>ADMISSION<br>Defendants' reach a large audience of emigres and asylees. |
| 15. | To ensure that TeachBK remains, in Kiselev's words, "at the top," Defendants have morphed their social media presence from simply promoting themselves and their associates to denigrating those whom they perceive as competitors. | DEFENDANTS' MOTIVATION PER PLAINTIFF<br>(see ¶16) |
| 16. | Specifically, Defendants have taken aim at Ms. Goldberg, who posts online about immigration and asylum and is affiliated with a law firm. Their statements and visual representations about Ms. Goldberg are calculated to frighten asylum seekers away from her employer by tarnishing her reputation. They have done so by | DEFENDANTS' MOTIVATION PER PLAINTIFF (¶¶15 &16)<br>"[D]enigrating those whom they perceive as competitors. Specifically, Defendants have taken aim at [Plaintiff], who posts online about immigration and asylum and is affiliated with a law firm." |

| | | |
|---|---|---|
| | falsely and maliciously telling their viewers that she sends asylum applicants' personal information to the Russian government and is a Kremlin agent. | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS<br>"[S]he sends asylum applicants' personal information to the Russian government…"<br><br>"[She] is a Kremlin agent." |
| 17. | Defendants' campaign of lies began in or around January 2023, when they began posting attack videos about Ms. Goldberg on their YouTube Channel and posting negative comments through Telegram and other social media channels. Ms. Goldberg's employer reached out to Defendants and their affiliates about the videos and Defendants removed two videos about Ms. Goldberg and paused their campaign briefly, only to reignite it again. At the time the attacks began, Ms. Goldberg had not interacted with Defendants in several years and her only interaction was warning subscribers to one of Defendants'  Telegram channels not to purchase fake identification documents, which Defendants were allowing to be sold via their Telegram Channel. (Defendants blocked Ms. Goldberg from that channel after she issued the warning.) | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS<br>• "began posting attack videos … on their YouTube channel"<br>• "posting negative comments through Telegram and other social media channels."<br><br>ADMISSION: PLAINTIFF MADE FALSE ALLEGATONS ABOUT DEFENDANTS<br>•[W]arn[ed] subscribers to one of Defendants' Telegram channels not to purchase fake identification documents, which Defendants were allowing to be sold via their Telegram Channel." |
| 18. | Around eight months after the attacks began, and after Kiselev threatened Ms. Goldberg with sexual violence on Facebook, Ms. Goldberg decided she would personally take action. She perused Defendants' social media accounts and learned that Kiselev had claimed he was involved in several legal disputes in Russia. She learned that he was being sued for defamation by a former opposition municipal deputy and Aleksey Navalny supporter named Valeriy Katkov. | ADMISSION<br>"[Plaintiff] perused Defendants' social media accounts…"<br><br>ADMISSION<br>Litigation privilege |
| 19. | In September 2023, Ms. Goldberg reached out to Katkov to inquire about his litigation against Kiselev in Russia. Somehow Defendants learned that Ms. Goldberg had reached out to Katkov and used that to continue to spin their narrative against her - a private citizen - to further their goals in tarnishing her reputation and thereby drawing viewers and potential clients away from the videos she posted on behalf of her law firm. | ADMISSION<br>Plaintiff did, in fact, contact ("reach[] out to) Katkov"<br><br>DEFENDANTS' MOTIVATION PER PLAINTIFF<br>"Defendants … continue to spin their narrative … to further their goals in tarnishing [Plaintiff's] reputation and thereby drawing viewers and potential clients away from the videos [Plaintiff] posted on behalf of her law firm. |

| 20. | Specifically, on September 7, 2023, Defendants posted a video on the YouTube Channel titled Connection between Marina Sokolovskaya from the US and the Russian government. Who does the immigration consultant leak information to?, which is located at: https.7/www.youtube.com/watch?v=ZL CMXcaB90 (the "September Video"). Attached as Exhibit 1 is a certified English translation of the September Video transcript. | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS Video "Who does the immigration consultant leak information to?" |
|---|---|---|
| 21. | The title of the September Video falsely portrays Ms. Goldberg as an agent of the Russian government who leaks information from prospective clients to the Russian Federation government apparatus. | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS •"September Video [Ex 1] portrays [Goldberg] as an agent of the Russian government" •Plaintiff "leaks information from prospective clients to the Russian Federation government apparatus." |
| 22. | The cover photograph for the video drives that message home. It depicts Ms. Goldberg next to Russian President Vladimir Putin with the Kremlin in the background. Putin is holding his index finger to his mouth conveying that Ms. Goldberg is spreading secrets, while Ms. Goldberg is holding her fingers in a V-shape against her neck, a Russian gesture that means "murder":  | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS September video [Ex 1] cover photograph "drives [the message from ¶21] home" |
| 23. | And the video and accompanying blurbs make the same false accusations. | PLAINTFF'S COMPLAINTS ABOUT DEFENDANTS Ditto ¶21 |
| 24. | Within the YouTube Channel and on the TeachBK website, Defendants append the following false and defamatory summary to the | ADMISSION Litigation privilege: "What case is currently being discussed in Russia?" |

| | | |
|---|---|---|
| | September Video: "Marina Sokolovskaya leaks personal data to a Russian deputy, who in turn is directly connected with Russia's security agencies. What case is currently being discussed in Russia, and who knows about it besides Marina and the intelligence services she works with? How ethical is it for Marina, who holds status in the US, to work with the authorities of a country she opposes? And how safe is it for those who come to America seeking political asylum? On what terms does Marina Sokolovskaya cooperate with Rubic in the US (Ekaterina Panova, Rubic.us)?" See Ex. 1. | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS<br>    •September video [EX 1]<br>•" leaks personal data to a Russian deputy, who in turn is directly connected with Russia's security agencies."<br>•"What case is currently being discussed in Russia, and who knows about it besides Marina and the intelligence services she works with?"<br>"How ethical is it for Marina, who holds status in the US, to work with the authorities of a country she opposes?"<br>•"And how safe is it for those who come to America seeking political asylum?"<br>•"On what terms does Marina Sokolovskaya cooperate with Rubic in the US" (Ekaterina Panova, Rubic.us)?" See Ex. 1. |
| 25. | Within the September Video, Defendants spread myriad falsehoods about Ms. Goldberg. For example, at around 11:40 in the video, Kiselev says:<br><br>I am also very surprised by this. How can a person in the United States suddenly have such a quick and close connection with the Russian authorities? And now the following question arises: given that this person runs an immigration channel, calls herself an immigration consultant, previously almost presented herself as a lawyer, takes cases for review, handles case mechanics, communicates with you, takes your contact details, meets people in Cancun, wherever she travels— Mexico City, where their offices are. She meets in New York, meets in the office, sees your faces, knows your contact details. Where do these contact details go later? Where does the essence of the cases you see go, to which Russian authorities? Is it normal for a Russian citizen, being in the United States and working for an American attorney at the Modern Law Group, to receive protection from the American government and then provide personal data to the Russian authorities about people who immigrate to the United States? | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS<br>        September Video, Ex 1<br>• "How can a person in the United States suddenly have such a quick and close connection with the Russian authorities?"<br> •"And now the following question arises: given that this person runs an immigration channel, calls herself an immigration consultant, previously almost presented herself as a lawyer, takes cases for review, handles case mechanics, communicates with you, takes your contact details, meets people in Cancun, wherever she travels—Mexico City, where their offices are. She meets in New York, meets in the office, sees your faces, knows your contact details. Where do these contact details go later? "<br><br>• "Where does the essence of the cases you see go, to which Russian authorities?"<br><br>• "Is it normal for a Russian citizen, being in the United States and working for an American attorney at the Modern Law Group, to receive protection from the American government and then provide personal data to the Russian authorities about people who immigrate to the United States?" |
| 26. | In response, at around 13:05, Burtsev invents facts about Ms. Goldberg informing on her law firm's clients to the Kremlin: | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS<br>September Video, Ex 1 |

| | | |
|---|---|---|
| | In this situation, you know, I think, what kind of conspiracy could there be, what kind of contract conditions could there be, that is, what other immigrants could she be sending there? Maybe it's all a streamlined situation where they say, Listen, we will help you, but you must provide information about everyone you find and know—people of interest, and maybe even call them by name—when they come to you, let us know, and we'll see if we are interested in this person or not. Oh, here's an interesting person! Oh, here's their case! Here's their face. When does he come to you? Oh, he has a bad case, right? Tell him his case is bad, and we will deport him. And we are waiting for him here. | •• In this situation, you know, I think,<br>• what kind of conspiracy could there be?<br>• what kind of contract conditions could there be?<br>• what other immigrants could she be sending there?<br><br>• Maybe it's all a streamlined situation where they say, Listen, we will help you, but you must provide information about everyone you find and know—people of interest, and maybe even call them by name—when they come to you, let us know, and we'll see if we are interested in this person or not. Oh, here's an interesting person! Oh, here's their case! Here's their face. When does he come to you? Oh, he has a bad case, right? Tell him his case is bad, and we will deport him. And we are waiting for him here.<br><br>LACK OF REFERENCE TO PLAINTIFF |
| 27. | And Kiselev concludes "And we will meet him, right." | |
| 28. | Defendants made these statements and images to scare their viewers and prospective clients of Ms. Goldberg's firm into believing that Ms. Goldberg was a Russian agent who would have them deported back to Russia where the authorities would be waiting for them to punish them. They used the fact that Ms. Goldberg had reached out to the man who is suing Kiselev for defamation in Russia to concoct a story that would tarnish Ms. Goldberg's reputation and scare asylum seekers into using their services and their attorney referrals instead of hiring Ms. Goldberg's law firm. And they used the imagery of Putin and the Kremlin in the September Video to drive home this unfounded conspiracy theory. | DEFENDANTS' MOTIVATION PER PLAINTIFF<br>• "Defendants made these statements and images to scare their viewers and prospective clients of Ms. Goldberg's firm into believing that Ms. Goldberg was a Russian agent who would have them deported back to Russia where the authorities would be waiting for them to punish them."<br><br>• "a story that would tarnish Ms. Goldberg's reputation and scare asylum seekers into using their services and their attorney referrals instead of hiring Ms. Goldberg's law firm."<br><br>• "conspiracy theory"<br><br>ADMISSION:<br>• Plaintiff reached out to Katkov |
| 29. | Kiselev and Burtsev also mischaracterized Ms. Goldberg's September 2023 communications with Katkov as part of a pattern of illicit cooperation with Russian authorities. Kiselev remarked that this "is not the first time. It means there is some connection between [Ms. Goldberg] and the current Russian authorities, | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS<br>• "mischaracterized Plaintiff's September 2023 communications with Katkov as part of a pattern of illicit cooperation with Russian authorities."<br>• "means there is some connection between [Plaintiff] and the current Russian authorities" |

| | | |
|---|---|---|
| | where there is a channel through which information goes in both directions. It means that the phone is answered, listened to, and then hung up. It means the phone is not thrown away when Sokolovskaya calls from the U.S. to Russia. This is simple logic; no need to speculate." | • "means … there is a channel through which information goes in both directions."<br><br>ADMISSION<br>•Plaintiff reached out to Katkov |
| 30. | He later says, "How she violates all personal data laws, international and others, leaking all the information to a hostile state of one country or another? Maybe she is a double agent." | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS<br>September Video, EX 1<br>• "How she violates all personal data laws, international and others, leaking all the information to a hostile state of one country or another? "<br><br>• "Maybe she is a double agent." |
| 31. | But Ms. Goldberg never communicated with Katkov before September 2023. | ADMISSION<br>• Plaintiff communicated with Katkov |
| 32. | Further, as Kiselev has admitted elsewhere online, Katkov was a municipal deputy and independent and had no government role when Ms. Goldberg contacted him. He wrote to his Instagram followers several times, including in August 2022—a year before Ms. Goldberg contacted Katkov—that he was glad that Katkov lost his bid to keep his municipal post, stating "get this filth out of the district," referring to Katkov. | LACK OF REFERENCE TO PLAINTIFF |
| 33. | The picture Kiselev commented on was a screenshot from Katkov where he wrote that he was "disgracefully taken of the ballots" and that he would not give up getting his seat back: | LACK OF REFERENCE TO PLAINTIFF |
| 34. | A certified translation of Kiselev's August 21, 2022 Instagram post is attached as Exhibit 2. | LACK OF REFERENCE TO PLAINTIFF |
| 35. | A week later, in an August 30, 2022 Instagram post, Kiselev wrote about Katkov: "[t]he deputy was thrown out, and he still remembers me and tries to ride on my coattails!! The authorities did the right thing by kicking this scum out of the district, who was just leeching and profiting in a drunken stupor. This criminal should be thrown in the trash, and let a deserving person, of which there are many, take the place!" | LACK OF REFERENCE TO PLAINTIFF |

|     |     |     |
| --- | --- | --- |
|     |     |     |
| 36. | A certified translation of Kiselev's August 30, 2022 Instagram post is attached as Exhibit 3. | LACK OF REFERENCE TO PLAINTIFF |
| 37. | Defendants purposefully mischaracterized Ms. Goldberg's encounter with Katkov to lie to their viewers and portray Ms. Goldberg as a Kremlin spy who shares information with the Russian government. | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS<br>• "portray [Plaintiff] as a Kremlin spy"<br>• "portray [Plaintiff as someone] who shares information with the Russian government."<br><br>ADMISSION<br>• Plaintiff had an encounter with Katkov |
| 38. | Kiselev and Burtsev make additional comments in the September Video to the effect that Ms. Goldberg a Kremlin agent, that her law firm's clients and potential clients are at risk, and that they therefore should turn to Defendants and their affiliates instead. Burtsev says:<br><br>People who came here for safety risk are not getting that safety. They are at risk because of these assurances from the U.S. that it is the safest country, that you can get protection here, and that you won't be removed if you have grounds for political asylum. Now it turns out that there is a person in the U.S. who collaborates as an infiltrated agent from Russia and transmits this data and also tries to influence the situation in such a way that the people whom the U.S. is protecting now should be deported. Maybe they want to collect some additional data to use it elsewhere for a different purpose. | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS<br>September Video<br>• "to the effect that [Plaintiff] a Kremlin agent"<br>• "her law firm's clients and potential clients are at risk…"<br>• "Burtsev says: … Now it turns out that there is a person in the U.S. who collaborates as an infiltrated agent from Russia"<br>• "Burtsev says: … agent from Russia … transmits this data and also tries to influence the situation in such a way that the people whom the U.S. is protecting now should be deport."<br>• Burtsev says: Maybe they want to collect some additional data to use it elsewhere for a different purpose."<br><br>DEFENDANTS' MOTIVATION PER PLAINTIFF<br>• Since the clients and potential clients of Plaintiff are at risk, those clients and potential clients should turn to Defendants and their affiliates instead<br><br>LACK OF REFERENCE TO PLAINTIFF |
| 39. | Kiselev and Burtsev conclude the video by asking whether Ms. Goldberg is "the Russian bear in the U.S." and showing an excerpt from Seventeen Moments of Spring, a Soviet television show about a Soviet spy operating in Nazi Germany. | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS<br><br>"Kiselev and Burtsev conclude the video by *asking* whether [Plaintiff] is 'the Russian bear in the U.S.'" [emphasis added] |
| 40. | To date, the September Video has been viewed by almost 8,000 people. |     |

| | | |
|---|---|---|
| 41. | Defendants did not stop their campaign there. They filmed several other videos about Ms. Goldberg and returned to the theme that she was a Russian spy in a video posted on the YouTube Channel and TeachBK website on May 18, 2024, titled US citizens work with Moscow / The Kremlin is online, which is located at: https://www.voutube.com/watch?v=EvnyYIBy_08 (the "May Video"). A certified English translation of the May Video transcript is included in Exhibit 1. | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS<br>May 18, 2024 Video<br>• "Defendants … returned to the theme that [Plaintiff] was a Russian spy"<br>• "US citizens work with Moscow/The Kremlin"<br><br>LACK OF REFERENCE TO PLAINTIFF |
| 42. | The May Video depicts Ms. Goldberg, as well as the owner of a Ukrainian news publication, Kateryna Panova, as Russian spies. The May Video includes a doctored photo depicting them in Russian NKVD uniform with the logo of the Federal Security Service of the Russian Federation (FSB) behind them:<br><br> | PLAINTIFF'S COMPLAINT ABOUT DEFENDANTS<br>May 18, 2024 video<br>• "depicts [Plaintiff] as [a] Russian sp[y]."<br><br>LACK OF REFERENCE TO PLAINTIFF |
| 43. | The display photograph states that "U.S. citizens are leaking information about Russians," meaning that Ms. Goldberg shares confidential information about Russian asylum seekers with to the Russian government. | PLAINTIFF'S COMPLAINT ABOUT DEFENDANTS<br>May 18, 2024 Video<br>• "[Plaintiff] shares confidential information about Russian asylum seekers to the Russian government."<br><br>LACK OF REFERENCE TO PLAINTIFF |
| 44. | But Ms. Goldberg is not a Russian spy or agent in any way. Ms. Goldberg is not affiliated with the Russian government. Ms. Goldberg maintains no contacts with the Russian government or any of its agents. | |
| 45. | And Ms. Goldberg has not shared any information about any person to the Russian government. Doing so would not only be illegal under various federal and state criminal laws, | |

| | | |
|---|---|---|
| | including 18 U.S.C. § 951, but would also violate state data privacy laws and the applicable rules of professional conduct involving client and prospective client confidentiality. | |
| 46. | Defendants knew Ms. Goldberg was not a spy and was not leaking information to the Russian government. They knew that she contacted Katkov only because she was investigating the background of Kiselev, the stranger was attacking her online. | DEFENDANTS' KNOWLEDGE<br>• "Defendants knew [Plaintiff] was not a spy…"<br>• "Defendants knew [Plaintiff] … was not leaking information to the Russian government."<br>• "Defendants knew [Plaintiff] … contacted Katkov only because she was investigating the background of Kiselev." |
| 47. | Yet they persisted in their smear campaign to continue to destroy Ms. Goldberg's reputation for their own financial benefit. | •DEFENDANTS' MOTIVATION PER PLAINTIFF<br>• "to destroy [Plaintiff's] reputation for their own financial benefit. |
| 48. | In addition to publishing the May Video, Defendants also disseminated images on social media promoting the same false claims about Ms. Goldberg. For example, they posted on the TeachBK Instagram account that Ms. Goldberg was part of a "unified and connected fraudulent scheme to send the personal information of asylum seekers to Moscow"<br><br> | PLAINTIFF'S COMPLAINT ABOUT DEFENDANTS<br>• "Defendants also … promot[ed] the same false claims about [Plaintiff] … on the TeachBK Instagram account that [Plaintiff] was part of a 'unified and connected fraudulent scheme to send the personal information of asylum seekers to Moscow'"<br><br>LACK OF REFERENCE TO PLAINTIFF |
| 49. | The hashtags in the post, on the other hand, bolster Defendants' brand with | ADMISSION<br>Defendants' activities concern assistance / activism on behalf of asylees/ émigrés. |

| | | |
|---|---|---|
| | Russian tags for "asylum," "Mexico," "ImmigrationUSA," "asylum case," "Sacramento attorney," etc. | |
| 50. | In the blurb for the May Video on their website and on the YouTube Channel, Defendants wrote that "Every time you contact those people [Ms. Goldberg, Ms. Panova, and Mr. Kharitonov], you assume a major risk of having your information transferred back to the place you are fleeing from, and to those who are after you. Respectfully, the TeachBK team." | PLAINTIFF'S COMPLAINT ABOUT DEFENDANTS<br>May Video<br>• "Defendants wrote that 'Every time [asylum seekers] contact [Plaintiff] [the asylum seekers] assume a major risk of having [their] information transferred back to the place [they] are feeling from, and to those who are after [them].<br><br>LACK OF REFERENCE TO PLAINTIFF |
| 51. | The May Video starts by explaining that Defendants learned that Marina Sokolovskaya was not Ms. Goldberg's legal name. They discuss Ms. Goldberg and others and finally at around 26 minutes into the May Video, Kiselev falsely states: "Marina Sokolovskaya is clearly connected with deputies from the city of Moscow. We have direct evidence of this. I personally have direct evidence of this. There are personal confirmations from Moscow in the form of witness statements—not just some friends, but witness statements that pertain to law in Moscow and are legal defenders in courts." | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS<br>May Video<br>• "[Plaintiff] is clearly connected with deputies from the city of Moscow"<br><br>LACK OF REFERENCE TO PLAINTIFF |
| 52. | That is false. To bolster their false claim, Defendants asserted that Ms. Goldberg's contact with Katkov—who was suing Kiselev at the time—connects her to the Russian authorities. They did so by falsely stating that he was a member of a pro-Kremlin party, when Defendants knew that he was not. And they falsely stated that Ms. Goldberg was supplying information about her law firm's clients to Russian authorities: "ask yourself the question: how do Marina Sokolovskaya and Ms. Ekaterina Panova have direct access to the country's leadership in the form of deputies and pro-Russian media in Moscow?" And: "Why do people who disclose information to Russian deputies in Moscow also openly show the cases of people who turned to them on their channels?" | PLAINTIFF'S COMPLAINT ABOUT DEFENDANTS<br>• "[Plaintiff's] contact with Katkov … connects her to the Russian authorities."<br>• "[Plaintiff] was supplying information about her law firm's clients to Russian authorities:"<br>• " 'ask yourself the question: how do[es Plaintiff] have direct access to the country's leadership in the form of deputies and pro-Russian media in Moscow?' "<br>• ' "Why do people who disclose information to Russian deputies in Moscow also openly show the cases of people who turned to them on their channels?' "<br><br>ADMISSION:<br>Plaintiff contacted Katkov<br><br>LITIGATION PRIVILEGE |

| | | |
|---|---|---|
| 53. | Like the September Video, the May Video also warns viewers that they are at risk if they contact Ms. Goldberg for immigration assistance because their information will end up in the Russian government's hands. Kiselev says: "They clearly understand what they are doing and how they are doing it. Moreover, we have complete evidence that Marina Sokolovskaya, who is not Marina Sokolovskaya, and Ekaterina Panova have a clear connection with Russia today. And they use this connection for communication, both ways. And before you engage in immigration, before you turn to these wonderful people, you need to think very carefully about where your information might surface at any given moment. And what consequences this might have for you." | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS<br>May Video<br>• "warns viewers that they are at risk if they contact [Plaintiff] for immigration assistance because their information will end up in the Russian government's hands."<br>• "we have complete evidence that [Plaintiff has] a clear connection with Russia today."<br>• "before [asylum seekers] engage in immigration, before [asylum seekers] turn to [Plaintiff] [asylum seekers] need to think very carefully about where [their] information might surface at any given moment. And what consequences this might have for [them]."<br><br>LACK OF REFERENCE TO PLAINTIFF |
| 54. | The May Video has been seen by more than 6,000 viewers. | |
| 55. | Shortly after the May Video was published to Defendants' subscribers and viewers, Ms. Goldberg posted a message on Facebook in connection with her volunteer efforts to search for missing persons. She posted about a man from Belarus whose family was searching for him. In response to the post, several individuals posted that they had "googled" Ms. Goldberg and warned others not to help her because she was a Kremlin agent—that she was looking for the man to turn him over to Russian authorities. Ms. Goldberg has also received other comments like these, as well as hate mail and threats. | |
| 56. | The statements and images in the September, March, and May Videos, like the other statements and images made by Defendants in Exhibit 1 and on the YouTube Channel, are false and defamatory. | *This is the first mention of the March video and there is no information concerning such a video elsewhere in the Complaint on Plaintiff's exhibits to the Complaint.* |
| 57. | They are false and defamatory because Ms. Goldberg is not a Russian agent, not affiliated with the Russian government, and has never transmitted personal information of clients or prospective clients of her employer's law firm to the Russian government. | |
| 58. | Acting as an unregistered foreign agent is a felony under federal law, specifically 18 U.S.C. | |

| | | |
|---|---|---|
| | § 951 and conspiring to commit an offense against the United 15 States constitutes a felony under 18 U.S.C. § 371. | |
| 59. | Defendants' above statements and images accuse Ms. Goldberg of both these federal crimes, among others. The statements and images also accuse Ms. Goldberg of dishonesty, poor integrity, a breach of confidence and trust, and acts that violate her professional obligations and constitute egregious professional misconduct. Such accusations have brought Ms. Goldberg's integrity and character into disrepute. | |
| 60. | Ms. Goldberg is not a Russian agent and is not involved in a conspiracy to commit an offense against the United States. She does not, has not, and would not leak information to Russian authorities, especially not the information of Russians seeking asylum in the United States, who could face serious harm if their information and the basis for their asylum requests were transmitted to the Russian government. | |
| 61. | Therefore, Defendants' statements that Ms. Goldberg is a Russian agent and has leaked information about asylum seekers to the Russian government, as well as the associated imagery, are false. | PLAINTIFF'S COMPLAINTS ABOUT DEFENDANTS<br>• Plaintiff "is a Russian agent"<br>• Plaintiff "leaked information about asylum seekers to the Russian government" |
| 62. | Defendants knew that the statements they made in the March, May and September Videos and in materials published in connection with those videos were false, and they made them with reckless disregard for the truth. They did so in an effort to bolster their clientele through an attack on the reputation of Ms. Goldberg, who was the face of her employer's social media marketing toward Russian asylum seekers. | DEFENDANTS MOTIVATION PER PLAINTIFF<br>• to "bolster their clientele" |
| 63. | As a result of the statements and videos, which have been viewed by thousands of people, Ms. Goldberg has suffered emotional and reputational harm. The lies have resulted in hate mail and negative comments online, impacts in her ability to volunteer for causes she is associated with, and difficulty in advocating for asylum seekers, many of whom believe that consulting with her about their asylum matter would result in their personal details and | |

| | | |
|---|---|---|
| | persecution histories being relayed to the Russian government they had just escaped. | |
| 64. | Defendants published the September, March, and May Videos, and materials on their website and social media in connection with those videos, to third parties. | |
| 65. | The third parties to whom Defendants published the statements and images were the general public, asylum seekers, and actual and potential customers of Ms. Goldberg's employer. | ADMISSION<br>• Defendants' audience includes asylum seekers |
| 66. | Those third parties reasonably understood that Defendants' statements in the September, March and May Videos, and materials published in connection with those videos, were about Ms. Goldberg. | |
| 67. | Defendants' statements impute to Ms. Goldberg criminal conduct and those third parties to whom the statements were directed reasonably understood the statements to mean that Ms. Golberg was a foreign spy who leaked client information to the Russian government, which constitutes felony criminal violations, and that the federal law enforcement was investigating her. | PLAINTIFF'S COMPLAINTS<br>• Plaintiff "was a foreign spy"<br>• Plaintiff "leaked client information to the Russian government" |
| 68. | Those statements also necessarily impute conduct and characteristics incompatible with Ms. Goldberg's profession as an employee of an immigration law firm, and as a U.S. citizen, and exposed Ms. Goldberg to hatred, contempt, ridicule, obloquy, and caused her to be shunned or avoided. | |
| 69. | Defendants' statements and caricatures of Ms. Goldberg were false and made without justification or privilege. | |
| 70. | Defendants failed to use reasonable care to determine the truth or falsity of those statements. They also acted intentionally and with malice, oppression, fraud, and reckless disregard for the truth when they made those statements, knowing that they were false. | |
| 71. | As a result of Defendants' statements and caricatures, Ms. Goldberg has suffered harm to | |

| | | |
|---|---|---|
| | her reputation, profession, occupation, as well as shame, mortification, and emotional distress. | |
| 72. | Accordingly, Ms. Goldberg has suffered damages as a result of Defendants' statements and caricatures in excess of $75,000. | |
| 73. | As a result of Defendants' statements and caricatures, Ms. Goldberg has also suffered irreparable injury for which monetary relief is an inadequate remedy and for which the public interest in favor of an injunction outweighs the potential harm to Defendants. | |
| 74. | Defendants published the September, March and May Videos, and materials on their website and social media in connection with those videos, to third parties. | |
| 75. | The third parties to whom Defendants published the statements were the general public, asylum seekers, and actual and potential customers of Ms. Goldberg's employer. | ADMISSION<br>• Defendants' audience includes asylum seekers |
| 76. | Those third parties reasonably understood that Defendants' statements in the September, March and May Videos, and materials published in connection with those videos, were about Ms. Goldberg. | |
| 77. | Because of facts and circumstances known to those third parties, the statements tended to injure Ms. Goldberg in her occupation and exposed her to hatred, contempt, ridicule and shame, and discouraged others from associating or dealing with her. | |
| 78. | Defendants' statements were false and made without justification or privilege. | |
| 79. | Defendants failed to use reasonable care to determine the truth or falsity of those statements. They also acted with malice, oppression, and fraud when they made these statements. | |
| 80. | As a result of Defendants' statements, Ms. Goldberg has suffered harm to her reputation, profession, occupation, as well as shame, mortification, and emotional distress. | |

| 81. | Specifically, Ms. Goldberg has had clients of her employer terminate their contracts because of Defendants' statements, had prospective clients to her employer's firm not engage the law firm because of Defendants' statements, she has received hate mail, negative comments on social media, and has had her charity work undermined, all as a result of Defendants' statements. | |
|---|---|---|
| 82. | Accordingly, Ms. Goldberg has suffered damages as a result of Defendants' statements and caricatures in excess of $75,000. | "caricatures" |
| 83. | As a result of Defendants'   statements and caricatures, Ms. Goldberg has also suffered irreparable injury for which monetary relief is an inadequate remedy and for which the public interest in favor of an injunction outweighs the potential harm to Defendants. | ADMISSION Defendants' alleged statements were "caricatures" |