Ethan Jacobs (SBN 291838)
ethan@ejacobslaw.com
ETHAN JACOBS LAW CORPORATION
100 Pine Street, Suite 1250
San Francisco, California 94111
Tel.: (415) 275-0845

James M. Slater (admitted *pro hac vice*)
james@slater.legal
SLATER LEGAL PLLC
2296 Henderson Mill Rd. N.E. #116
Atlanta, Georgia 30345
Tel.: (404) 458-7283

*Attorneys for Plaintiff*
*Miriam Goldberg*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MIRIAM GOLDBERG, a/k/a Marina Sokolovskaya,<br><br>        Plaintiff,<br><br>v.<br><br>TEACHBK, INC., ILYA KISELEV and ANDREI BURTSEV,<br><br>        Defendants. | Case No.: 3:24-cv-04525-LJC<br><br>**PLAINTIFF MIRIAM GOLDBERG'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT** |

# TABLE OF CONTENTS

I.      Background ........................................................................................................... 1

II.     Legal Standard ................................................................................................... 4

III.    Argument ............................................................................................................ 5

        A.      Conflicting Evidence Dooms Defendants' Motion. ......................... 6

        B.      Goldberg Has a Probability of Success on Her Defamation

                Claims. .......................................................................................... 6

                1.      Defendants' Statements Are "Of and Concerning"

                        Goldberg. ........................................................................ 6

                2.      Defendants' Statements Are Not Non-Actionable

                        Opinions. ......................................................................... 7

                3.      Goldberg Is Not a Limited-Purpose Public Figure. ......................... 10

                4.      Even if Goldberg Were a Limited-Purpose Public Figure,

                        She Can Demonstrate Actual Malice. ................................................. 11

                5.      The Privileges Defendants Raise Do Not Apply. .............................. 13

II.     The Court Should Award Goldberg Her Attorneys' Fees Because

        Defendants' Anti-SLAPP Motion Is Frivolous ........................................... 19

III.    If the Motion is Granted, Plaintiff Should Be Given Leave to Amend ................. 20

IV.     Conclusion ...................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Cases**

*Barger v. Playboy Enters.*,
    564 F. Supp. 1151 (N.D. Cal. 1983) ................................................................. 7

*Billauer v. Escobar-Eck*,
    88 Cal. App. 5th 953 (Cal. Ct. App. 2023) ................................................. 5, 6

*Blatty v. N.Y. Times Co.*,
    42 Cal. 3d 1033 (Cal. 1986) ............................................................................ 7

*Brill Media Co. v. TCW Grp., Inc.*, 132 Cal. App. 4th 324 (Cal. Ct. App. 2005)). ........... 5

*Bui v. Ngo*, 101 Cal. App. 5th 1061, 1074 (Cal. Ct. App. 2024) ................................... 11

*Bull. Displays, LLC v. Regency Outdoor Advert., Inc.*,
    448 F. Supp. 2d 1172 (C.D. Cal. 2006) .......................................................... 4

*Cable v. Sahara Tahoe Corp.*,
    93 Cal.App.3d 384, 155 Cal.Rptr. 770 (Cal. Ct. App. 1979) ......................... 4

*Catch Curve, Inc. v. Venali, Inc.*,
    2008 WL 11334024 (C.D. Cal. Nov. 3, 2008) ............................................... 17

*City of Cotati v. Cashman*,
    29 Cal. 4th 69, 78 (Cal. 2002) ........................................................................ 5

*Copp v. Paxton*,
    52 Cal.Rptr.2d 831, 839 (Cal. Ct. App. 1996) ............................................... 9

*Dean v. Friends of Pine Meadow*,
    21 Cal. App. 5th 91 (Cal. Ct. App. 2018) ..................................................... 18

*Ferlauto v. Hamsher*,
    74 Cal. App. 4th 1394 (Cal. Ct. App. 1999) ................................................... 7

*Freeman v. Lasky, Haas & Cohler*,
    410 F.3d 1180 (9th Cir. 2005) ....................................................................... 18

*Gallagher v. Philipps*,
    563 F. Supp. 3d 1048 (S.D. Cal. 2021) ......................................................... 16

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ....................................................................................... 11

*Hawran v. Hixson*,
    209 Cal. App. 4th 256 (2012) ........................................................................ 14

*Herring Networks, Inc. v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021) ........................................................................... 8

*Hopscotch Adoptions, Inc. v. Kachadurian*,
    2011 WL 587357 (E.D. Cal. Feb. 9, 2011) ..................................................... 4

ii

*Jarrow Formulas, Inc. v. LaMarche*,
  31 Cal. 4th 728, 746 (Cal. 2003) ........................................................................... 5

*Johnson v. JP Morgan Chase Bank DBA Chase Manhattan*,
  536 F. Supp. 2d 1207 (E.D. Cal. 2008) ................................................................ 17

*Kahn v. Bower*,
  232 Cal.App.3d 1599 (Cal. Ct. App. 1991) ............................................................. 9

*Kashian v. Harriman*,
  98 Cal.App.4th 892 (Cal. Ct. App. 2002) ............................................................. 14

*Lam v. Univision Commc'ns, Inc.*,
  329 So. 3d 190 (Fla. Dist. Ct. App. 2021) .............................................................. 4

*Lee v. Azar*,
  2024 WL 239248 (Cal. Ct. App. Jan. 23, 2024) ................................................... 14

*Makaeff v. Trump Univ., LLC*,
  715 F.3d 254 (9th Cir. 2013) ................................................................................. 10

*Metabolife Int'l, Inc. v. Wornick*,
  264 F.3d 832 (9th Cir. 2001) ................................................................................... 4

*Moore v. Shaw*,
  116 Cal.App.4th 182 (Cal. Ct. App. 2004) ........................................................... 19

*New York Times Company v. Sullivan*,
  376 U.S. 254 (1964) ......................................................................................... 10, 11

*Newton v. Nat'l Broad. Co.*,
  930 F.2d 662 (9th Cir. 1990) ........................................................................... 13, 14

*Oviedo v. Windsor Twelve Properties, LLC*,
  212 Cal.App.4th 97 (Cal. Ct. App. 2012) ............................................................... 5

*Planet Aid, Inc. v. Reveal*,
  44 F.4th 918 (9th Cir. 2022) ................................................................................. 10

*Prof'l Real Est. Investors, Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993) ................................................................................................. 17

*Roberts v. McAfee, Inc.*,
  660 F.3d 1156 (9th Cir. 2011) ................................................................................. 5

*Rogers v. Home Shopping Network, Inc.*,
  57 F. Supp. 2d 973 (C.D. Cal. 1999) ...................................................................... 4

*Sanchez v. Law Off. of Armo*,
  2021 WL 1214559 (E.D. Cal. Mar. 31, 2021) ......................................................... 5

*Sarlot-Kantarjian v. First Penn. Mortgage Trust*,
  599 F.2d 915 (9th Cir. 1979) ................................................................................... 4

iii

*SDV/ACCI, Inc. v. AT&T Corp.*,
  522 F.3d 955 (9th Cir. 2008) ................................................................ 7, 14

*Shahid Buttar for Congress Comm. v. Hearst Commc'ns, Inc.*,
  2022 WL 1215307 (N.D. Cal. Apr. 25, 2022) ....................................... 20

*Silberg v. Anderson*,
  50 Cal.3d 205 (Cal. 1990) ...................................................................... 17

*Simpson Strong-Tie Co. v. Gore*,
  49 Cal. 4th 12 (Cal. 2010) ........................................................................ 4

*St. Amant v. Thompson*,
  390 U.S. 727 (1968) ................................................................................ 11

*Time, Inc. v. Firestone*,
  424 U.S. 448 (1976) ................................................................................ 11

*Travelers Prop. Cas. Co. of Am. v. KB Home Coastal Inc.*,
  2013 WL 12114485 (C.D. Cal. Jan. 16, 2013) ......................................... 5

*Verizon Del., Inc. v. Covad Commc'ns Co.*,
  377 F.3d 1081 (9th Cir. 2004) ............................................................... 20

**Statutes**

Cal Civ. Proc. Code § 128.5 ...................................................................... 19

Cal. Civ. Code § 47(d) ............................................................................... 16

Cal. Civ. Proc. Code § 425.16 .............................................................. 4, 19

Fla. Stat. § 768.295 ..................................................................................... 4

**Rules**

Fed. R. Civ. P. 15(a) .................................................................................. 20

iv

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN**
**OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

Defendants move to strike Plaintiff's Complaint under California Civil Procedure Code section 425.16 (the "anti-SLAPP statute") [ECF No. 28] ("Mot."), arguing that the parties appear before this Court simply because Plaintiff is "[u]nhappy with the exposure" from Defendants' posts and videos. (*Id.* at 10.)[1] Defendants would have the Court believe them telling thousands of people that Plaintiff leaks asylum seekers' personal information to the Russian government and is under federal investigation as part of a spy ring is just "exposure." Defendants fail to understand that they cannot spread baseless, harmful lies about people they dislike or perceive as competitors with impunity. The motion to strike should be denied, and Plaintiff should be awarded her reasonable attorney's fees for her defense of this frivolous motion.

## I.  Background

Plaintiff Miriam Goldberg a/k/a Marina Sokolovskaya is the development director and intake manager for a U.S.-based immigration law firm. *See* Declaration of Miriam Goldberg ("Goldberg Decl.") ¶ 5, which is being filed with this opposition. As part of her employment for an immigration law firm, she posts videos and content about immigration issues on her employer's social media accounts. *Id.* Before joining that law firm in 2022, Ms. Goldberg was out of work in 2020 and 2021 and was not affiliated with any immigration law firm. *Id.*

Ms. Goldberg learned about Defendants through their Telegram channel they started in 2021 in which individuals sold fake identification documents to potential asylees, among other things. *Id.* at ¶ 14. Defendants banned Ms. Goldberg from their Telegram channel after Plaintiff pointed out that this was illegal. *Id.*

---

[1] References to page numbers in the motion to strike or otherwise are the CM/ECF page number populated at the top right of the document.

Later, around January 2023, Defendants started to post videos about Ms. Goldberg online. *Id.* at ¶ 16. Those videos were eventually taken down, but Defendants' followers continued the campaign through death threats and horrific posts, which Defendants liked with heart emojis. *Id.* at ¶ 17. Then, in August 2023, Kiselev made a comment on social media in which he threatened Ms. Goldberg with sexual violence. *Id.* at ¶ 19.

In September 2023, Ms. Goldberg, disturbed by Kiselev's comments, contacted a former municipal deputy named Valeriy Katkov who had unsuccessfully sued Kiselev in Russia for defamation. *Id.* at ¶ 20. At the time Ms. Goldberg spoke to Katkov, she understood he was no longer a Russian municipal deputy. *Id.* at ¶¶ 20–21. Defendants also knew that Katkov was not affiliated with the Russian government in 2023, as he was taken off the ballots sometime in the summer of 2022. *Id.* at ¶ 21; *see also* Compl. ¶¶ 31–37, Exs. 2 & 3.[2] Kiselev prevailed in his lawsuit against former deputy Katkov, and around a year later his lawyer advertised his services in Katkov's newsletter. *See* Goldberg Decl. ¶ 22. The judge who presided over that case continues to preside over cases at the same court. *Id.*

In September 2023, not long after Ms. Goldberg contacted Katkov, Defendants posted a video and ancillary materials about her in which they called her a Russian agent who leaks asylees' personal information to the Russian government. *See Compl.* ¶¶ 20–30. The cover of the video positions Ms. Goldberg next to Russian Federation President Vladimir Putin in which he puts his index finger to his lips to convey a secret—that Ms. Goldberg is sending his administration information. *Id.* at ¶ 22. They even referred to her as the "Russian bear in the U.S." while showing an excerpt from a Soviet television show about spies. *Id.* at ¶¶ 38–39. Thousands of people have viewed that video. *Id.* at ¶ 40.

---

[2] The August 30, 2022 social media post referenced in paragraph 35 of the Complaint contains an image of the newsletter written by Katkov in which he discusses that Kiselev has left Russia to the United States. *See* Goldberg Decl. ¶ 25.

In March 2024, Defendants posted a video about Ms. Goldberg and two others[3] in which they referred to them as part of a "major espionage network" with a "criminal structure" that the Federal Bureau of Investigation was investigating. *Id.* at ¶ 48. Defendants posted the same statement on Instagram, where they depicted a woman smoking a cigarette in a Soviet uniform with an American flag. Defendants stated that Ms. Goldberg was part of a "unified and connected fraudulent scheme to send the personal information of asylum seekers to Moscow." *Id.*

In May 2024, Defendants posted another video about Ms. Goldberg in which they depicted her and a journalist as spies clad in the Russian NKVD uniform. *Id.* at ¶¶ 41–42. The display photograph in that video states that "U.S. citizens are leaking information about Russians." *Id.* at ¶ 43. Defendants also wrote that "Every time you contact those people [Goldberg, Panova, and Kharitonov], you assume a major risk of having your information transferred back to the place you are fleeing from, and to those who are after you. Respectfully, the TeachBK team." *Id.* at ¶ 50. Thousands of people have seen that video. *Id.* at ¶ 54.

Ms. Goldberg is not and has never been an agent of the Russian government, a Russian spy, part of a Russian spy ring, under investigation by federal law enforcement, nor has she ever "leaked" or transmitted anyone's information to the Russian government. Goldberg Decl. ¶¶ 3, 37.

---

[3] The other individuals referenced are Kateryna Panova, the owner of the publication "Rubic," and Maksim Kharitonov. Rubic is currently being sued by Aleksey Tovarian, a lawyer who appears on Defendants' YouTube channel, over a publication by Rubic about how the TeachBK business works. *See Aleksey Tovarian v. Rubic, LLC*, Case No. 2:24-cv-14037 (S.D. Fla.). In that report, Rubic relied on a WhatsApp voice message that Kiselev sent to Kharitonov. [ECF No. 5]. Kharitonov's identity as Rubic's source was revealed in a declaration filed in that proceeding on February 9, 2024 [*see id.*], weeks before Defendants made this post accusing Kharitonov, Panova, and Plaintiff of being in a spy ring under federal investigation. (Kharitonov was identified in the original complaint as a fictitious defendant. [ECF No. 1-2].) Plaintiff asks that the Court take judicial notice of these limited facts.

## II.    Legal Standard[4]

California's anti-SLAPP statute authorizes the pre-trial dismissal of "SLAPPs" ("Strategic Lawsuits against Public Participation"). Cal. Civ. Proc. Code § 425.16; *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). SLAPP suits are civil lawsuits "aimed at preventing citizens from exercising their political rights or punishing those who have done so." *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 21 (Cal. 2010).

"Special procedural rules apply where an anti-SLAPP motion is brought in federal court." *Bull. Displays, LLC v. Regency Outdoor Advert., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006); *see also Hopscotch Adoptions, Inc. v. Kachadurian*, 2011 WL 587357, at *3 (E.D. Cal. Feb. 9, 2011). Federal courts must apply federal standards when considering motions brought under § 425.16. *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999). "If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies." *Id.* at 983.

A court considering a motion to strike under California's anti-SLAPP statute must engage in a two-part inquiry. First, a defendant must make an initial prima facie showing that plaintiff's suit arises from activity protected by the anti-SLAPP statute. Cal. Civ. Proc. Code § 425.16 (b)(1). In determining whether defendant has made this

---

[4] In diversity cases, federal courts apply the conflict-of-law principles of the forum state. *See Sarlot-Kantarjian v. First Penn. Mortgage Trust*, 599 F.2d 915, 917 (9th Cir. 1979). The "state with the 'predominant' interest" in applying its law "normally is the state in which [the underlying] conduct occurs." *Cable v. Sahara Tahoe Corp.*, 93 Cal.App.3d 384, 155 Cal.Rptr. 770, 777 (Cal. Ct. App. 1979). Defendants cast doubt over whether they were in Florida or California at the time when the underlying conduct occurred. (Mot. at 11.) If Florida law applies, Florida courts are split as to whether the type of burden shifting under the California anti-SLAPP statute violates the Florida Rules of Civil Procedure. *See Lam v. Univision Commc'ns, Inc.*, 329 So. 3d 190, 199 (Fla. Dist. Ct. App. 2021) ("[W]e decline to follow the Second District's decision in *Gundel* because the plain text of Florida's Anti-SLAPP statute does not impose a heightened burden on Plaintiffs."). If the Court applies Florida law, the Court should find that Defendants bear the burden to demonstrate that Plaintiff's claims are meritless under section 768.295, Florida Statutes, and they cannot meet that burden.

required showing, the California Supreme Court has stressed that "the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (Cal. 2002). Second, "[i]f the defendant is able to make this threshold showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Sanchez v. Law Off. of Armo*, 2021 WL 1214559, at *13 (E.D. Cal. Mar. 31, 2021) (citing *Brill Media Co. v. TCW Grp., Inc.*, 132 Cal. App. 4th 324, 328 (2005)). The "probability" threshold is a "low bar." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1163 (9th Cir. 2011). Therefore, a plaintiff must show that the claim "is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 746 (Cal. 2003). Any claim that satisfies these requirements is "not subject to being stricken as a SLAPP." *Id.*

In evaluating the parties' submissions, "if there is a conflict in the evidence (the existence of a disputed material fact), the anti-SLAPP motion should be denied." *Billauer v. Escobar-Eck*, 88 Cal. App. 5th 953, 965 (Cal. Ct. App. 2023), *reh'g denied* (Mar. 16, 2023), *review denied* (June 14, 2023) (*citing Oviedo v. Windsor Twelve Properties, LLC*, 212 Cal.App.4th 97, 112 (Cal. Ct. App. 2012); *see also Travelers Prop. Cas. Co. of Am. v. KB Home Coastal Inc.*, 2013 WL 12114485, at *2 (C.D. Cal. Jan. 16, 2013) ("All of the defenses raised by Defendants require evaluation of conflicting evidence and cannot be the grounds for a victorious anti-SLAPP motion.").

## III.   Argument

Because Ms. Goldberg meets the "low bar" of establishing a probability of success on her defamation claims, because the defenses and privileges Defendants raise are inapplicable, and because Defendants' motion to strike requires the Court to evaluate competing evidence, the motion should be denied.

**A.    Conflicting Evidence Dooms Defendants' Motion.**

As a threshold matter, the motion to strike should be denied because Defendants present the Court with a series of apparent falsehoods about the circumstances underlying their defamatory publications about Ms. Goldberg. They claimed that Ms. Goldberg reached out to a Russian government official, when they knew Katkov was no longer a municipal deputy. *See Compl.* ¶¶ 32–37; Goldberg Decl. 21. They claimed that the judge in the Katkov case was removed, but she is apparently still on the bench. Goldberg Decl. ¶ 22. They claimed that they moved to California because Katkov learned about Kiselev's relocation from Russia to the United States, but he knew about that a year earlier and the evidence supports that Defendants moved to California before Ms. Goldberg contacted Katkov. *Id.* at ¶¶ 25–29. The pervasive conflicts in evidence doom Defendants' motion to strike, *see Billauer*, 88 Cal. App. 5th at 965, and the easily controverted statements by Defendants under oath should militate towards a finding of frivolousness when evaluating Ms. Goldberg's request for attorney's fees.

**B.    Goldberg Has a Probability of Success on Her Defamation Claims.**[5]

Ms. Goldberg has a probability of success on her defamation claims because (1) the statements in the Complaint are "of and concerning" her and (2) are provably true or false statements with defamatory meaning, not opinion or hyperbole, (3) she is a private figure, (4) but either way she can demonstrate actual malice, and (5) the privileges Defendants raise are inapplicable.

**1.    Defendants' Statements Are "Of and Concerning" Goldberg.**

The Complaint alleges that Defendants attacked Ms. Goldberg on their social media channels and websites through a collection of lies. *See generally*, *Compl.* For example, the first video Defendants posted contains a banner photograph of Ms. Goldberg next to Russian Federation President Vladimir Putin, on which Defendants

---

[5] As California courts broadly construe matters of public concern, Plaintiff concedes that aspect of the inquiry.

write "Connection between [Plaintiff] from the US and the Russian government. Who does the immigration consultant leak information to?" *Id.* at 23.

Defendants claim that because the Complaint notes that Defendants' smear campaign <u>also</u> targeted or affected Ms. Goldberg's employer and another individual, the attacks are not on her. But references in the Complaint to Defendants' attacks on others do not make her defamation claims defective for failure to plead defamatory statements "of and concerning" Ms. Goldberg. (Mot. at 19).

"Plaintiffs who sue for defamation must show that the allegedly libelous statements were made 'of and concerning' them, *i.e.*, referred to them personally." *Barger v. Playboy Enters.*, 564 F. Supp. 1151, 1153 (N.D. Cal. 1983). A libel plaintiff "cannot constitutionally establish liability unless he proves that the contested statements are 'of and concerning' him either by name or by 'clear implication.'" *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1404 (Cal. Ct. App. 1999). "In California, whether statements can be reasonably interpreted as referring to [the] plaintiff[ ] is a question of law for the court . . . . If there is no express reference to the plaintiff in a defamation statement, the claim will fail unless the statement refers to the plaintiff by reasonable implication." *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008). This requirement prevents complaints that nonspecific statements have harmed someone even though they are not the direct object of the statement. *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1044 (Cal. 1986).

Here, Complaint alleges many defamatory statements by Defendants about Ms. Goldberg in which they expressly reference her. *See, e.g., Compl.* at ¶¶ 16, 20–30, 38–39, 41–46, 48–51. Defendants ask the Court to "strike claims that are not 'of and concerning' Plaintiff," but there are no such claims. For this reason, the Court should easily reject this argument.

### 2.   Defendants' Statements Are Not Non-Actionable Opinions.

Defendants also claim their statements are non-actionable opinions. But their statements are not opinion; they are provably true or false statements of fact.

7

In determining whether a statement implies an assertion of objective fact rather than a non-actionable statement, a court applies a three-part test: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021) (citation omitted).

Defendants claim their statements about Ms. Goldberg are non-actionable opinions, but only identify three paragraphs of the complaint. (Mot. at 26:19-23, citing *Compl.* ¶¶ 24–26.) And those paragraphs identify statements that are not opinion, and are not mere rhetoric and hyperbole.

The first paragraph transcribes the online summary of Defendants' September 7, 2023 video, in which they wrote "[Ms. Goldberg] leaks personal data to a Russian deputy, who in turn is directly connected with Russia's security agencies. What case is currently being discussed in Russia, and who knows about it besides [Goldberg] and the intelligence services she works with. How ethical is it for [Goldberg], who holds status in the US to work with authorities in a country she opposes? And how safe is it for those who come to America seeking political asylum? …" Compl. ¶ 24. That statement is not mere opinion or rhetoric because it contains provably true or false statements of fact, which are whether Ms. Goldberg:

- Leaked data to a Russian deputy/Russian security agencies;
- Discussed asylees' cases with the Russian government; and
- Works with Russian intelligence services/Russian government.

And Complaint paragraphs 25 and 26, referenced in the motion to strike, include the same types of statements:

- Plaintiff, who works for an immigration law firm, provides personal data to the Russian authorities about people who immigrate to the United States.

Kiselev and Burtsev then explain how Ms. Goldberg's arrangements with the Russian authorities to leak asylees' personal information could work out. *Id.*

These are all provably true or false and therefore not opinion. Statements that are provably false facts, instead of merely opinion, are those which can be "susceptible of being proved true or false." *Copp v. Paxton*, 52 Cal.Rptr.2d 831, 839 (Cal. Ct. App. 1996); *see Weller v. American Broadcasting Companies, Inc.*, 283 Cal.Rptr. 644, (Cal. Ct. App. 1991) (holding that the statement "grossly inflated price" was provably false factual assertion); *Kahn v. Bower*, 232 Cal.App.3d 1599, 1609 (Cal. Ct. App.1991) (premise of incompetence in statement is found reasonably susceptible of a provably false meaning).

The Complaint identifies other defamatory statements by Defendants that are not opinion. For example: Ms. Goldberg is a "double agent," *id.* at ¶ 30; there was no need to speculate as to why the Russian government would answer her calls, *id.* at ¶ 29; she is "the Russian bear in the United States" (while playing a Soviet spy T.V. show), *id.* at ¶ 39; Ms. Goldberg is an "infiltrated agent from Russian and transmits [personal] data," *id.* at ¶ 38; Ms. Goldberg was part of a major espionage network that is being investigated by federal law enforcement, *id.* at ¶ 48.

Ms. Goldberg does not claim Defendants' statement that she spoke with Katkov about Kiselev was defamatory. (Mot. at 26.) Indeed, as Defendants point out, she explains it is true and the circumstances under which she spoke with him but denies that he was affiliated with the Russian government, and Kiselev's owns social media posts confirm that he knows that his assertions that Katkov was then affiliated with the government are false. *See Compl.* ¶¶ 32–37, Exs. 2 & 3; Goldberg Decl. ¶ 25.

Plaintiff Miriam Goldberg's Memorandum of Points and Authorities in
Opposition to Defendants' Special Motion to Strike Complaint

### 3.      Goldberg Is Not a Limited-Purpose Public Figure.

In *New York Times Company v. Sullivan*, the Supreme Court established that public officials and public figures claiming defamation must prove that the allegedly defamatory statement was made with "actual malice"—that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times*, 376 U.S. 254, 280 (1964). There are two types of public figures for which the requisite degree of fault is heightened—general and limited purpose. In determining whether a person is a limited or general purpose public figure, California courts consider whether "(i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected [himself] into the controversy for the purpose of influencing the controversy's ultimate resolution." *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 924 (9th Cir. 2022) (citing *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013)).

Defendants assert that Ms. Goldberg is "at minimum" a limited-purpose public figure for this controversy. (Mot. at 22:13-16.) In support, they contend that Ms. Goldberg injected herself into the public eye by, essentially, working for an immigration law firm, posting videos about immigration issues for that law firm, and helping to find missing persons. (*Id.* at 22:13–23:11.) But a public controversy "must be a real dispute, the outcome of which affects the general public or some segment of it." *Makaeff*, 715 F.3d at 267 (citations omitted). In Defendants' view, the "controversy" is immigration writ large. But the controversy, as Defendants assert in their motion, is narrower: whether Plaintiff and others leak asylees' personal information to the Russian government and whether Ms. Goldberg and these others are being investigated by the Federal Bureau of Investigation as a part of a "major espionage network." *Compl.* ¶ 48. Under that narrow lens, nothing in the Complaint supports the proposition that Ms. Goldberg is a limited-purpose public figure.

Indeed, a private individual is not transformed into a public figure by becoming involved in or associated with a matter that attracts public attention. *Bui v. Ngo*, 101 Cal. App. 5th 1061, 1074 (Cal. Ct. App. 2024), *review denied* (July 31, 2024) (collecting cases). To thrust or inject oneself into the controversy requires the "assum[ption of] special prominence in the resolution of a public question," or to "engage the public's attention in an attempt to influence the outcome." *Id.* (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344-45 (1974)) (cleaned up).

Here, Ms. Goldberg posted videos about immigration as a condition of her employment. She did not "choose to publicize issues" as to the content of those videos. Goldberg Decl. ¶ 5. *See also Bui*, 101 Cal. App. 5th at 1075 (citing *Time, Inc. v. Firestone*, 424 U.S. 448 (1976)). And nothing in the Complaint suggests Ms. Goldberg injected herself into the issue of Russian agents sending asylees' information to the Russian government or being part of a Russian spy network under FBI investigation. Accordingly, Defendants' efforts to characterize Ms. Goldberg as a public figure simply because she has spoken about immigration issues before must fail.

### 4.    Even if Goldberg Were a Limited-Purpose Public Figure, She Can Demonstrate Actual Malice.

Ms. Goldberg can demonstrate that, as a private figure, Defendants acted negligently when they broadcast that she was a Russian agent—even if the evidence supporting their motion bears out at a later stage. That said, even if the Court agreed with Defendants' argument that Ms. Goldberg must demonstrate Defendants made their statements with actual malice, she can make that showing.

Actual malice is a subjective test; it means that a defendant published a statement with "knowledge that it was false" or "reckless disregard of whether it was false or not." *N.Y. Times*, 376 U.S. at 280. Reckless disregard, in turn, means that a defendant "in fact entertained serious doubts as to the truth" of that statement. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

Here, Ms. Goldberg can show that Defendants acted with reckless disregard for the truth when publishing their statements accusing her of leaking information to the Russian government as part of a "major espionage network," among other things. *See, e.g.*, *Compl.* ¶ 48 n. 2.

Specifically, Defendants assert that they did not act with reckless disregard for the truth because they learned that Ms. Goldberg had spoken to Katkov, who they contend is associated with Russian security services as a Russian government official. They also contend that an individual who contacted Ms. Goldberg's law firm was later contacted by the Russian authorities. Incredibly, Defendants also say they never called Ms. Goldberg a "spy" or "Russian agent" despite the plain language of their statements.

Defendants' efforts to avoid liability fail. First, the Complaint and Ms. Goldberg's attached declaration dispel any notion that Defendants honestly believed Katkov was a Russian government official in 2023 when she contacted him. *See, e.g.*, *Compl.* Exs. 2 & 3; Goldberg Decl. ¶ 25. Further, as Ms. Goldberg stated under oath, the article in her Instagram post appended to the Complaint from August 2022 indicated that Katkov knew that Kiselev fled to the United States; whereas Kiselev explained that it was only after Ms. Goldberg spoke to Katkov that Katkov learned Kiselev was in the United States. Moreover, Defendants testified that they relocated to California after Ms. Goldberg spoke to Katkov in September 2023, but the evidence establishes that they had already relocated to California. Goldberg Decl. ¶¶ 25–29. They said that Kiselev's lawyer went into hiding, but he published an advertisement a year later in Katkov's newsletter. *Id.* at ¶ 22. And Defendants said the judge in the Katkov case was removed under political pressure, but she is still on the court. *Id.* Essentially, Defendants created an entirely fictional story about Ms. Goldberg and used the fact that she contacted Katkov as a fig leaf for their blatant conspiracy-mongering. That constitutes actual malice. And even if the Court expressed some doubts here, the conflict in evidence precludes a determination in Defendants' favor at this stage.

Second, as for Mr. Ledestimminov's declaration, Ms. Goldberg denies under oath that employer's video referenced anything about him that could have been shared with the Russian government (other than his city), and she did not even know his last name to send to the Russian government, even if she were a spy (she has unequivocally stated that she is not, which Defendants knew and know). *Id.* at ¶¶ 31–37. It was instead Defendants who published a video about Ledestemminov and used his voice. *Id.* at ¶ 38. Thus even if his story were true, *see id.* at ¶ 36, it is vastly more likely that Defendants' video identified him to the Russian government. And either way, when someone publishes information from an unverified source, they must make some effort to corroborate the story or actual malice will attach. *Newton v. Nat'l Broad.* Co., 930 F.2d 662, 682–83 (9th Cir. 1990). Defendants did not do that when they made up these stories about Ms. Goldberg being a spy or part of a spy network.

And finally, Defendants make no excuses for their video, corresponding summary, and Instagram post about Ms. Goldberg being part of a spy ring that is under federal investigation. *See Compl.* ¶¶ 48–50. They do not defend those statements because they are indefensible and defamatory. And even if they tried to, Defendants clearly picked three people whom they apparently disliked— Ms. Goldberg, the proprietor of an online publication that launched an expose about TeachBK, and the source for that story—and told their audience that they were all three part of a criminal spy network that was under investigation.

## 5. The Privileges Defendants Raise Do Not Apply.

Defendants assert that their statements are privileged, which would bar Ms. Goldberg's defamation claims. As explained below, the asserted privileges do not apply here.

### a) The common interest privilege is inapplicable.

The common interest privilege applies to statements disseminated to a limited, interested group, not to statements posted online for anyone to access, including those with no interest in the subject matter. *See Kashian v. Harriman*, 98 Cal.App.4th 892,

13

914 (Cal. Ct. App. 2002) (the common interest privilege statute "does not create a broad 'public interest privilege' protecting publications ... to the general public regarding private persons"); *see also Lee v. Azar*, 2024 WL 239248, at *5 (Cal. Ct. App. Jan. 23, 2024) (unpublished); *Hawran v. Hixson*, 209 Cal. App. 4th 256, 287 (Cal. 2012) (rejecting application of common interest privilege where defendant "disseminated to the PR Newswire, a wire service distribution vehicle, and, from there, to the world at large via numerous Internet sources, well beyond the "investing public" or those having a proprietary interest in the subject matter.").

Here, the common interest privilege does not apply for three reasons. First, as explained above, Ms. Goldberg has established actual malice. For the common interest privilege, "if malice is shown, the privilege is not merely overcome; it never arises in the first instance." *Kashian*, 98 Cal. App. 4th at 914 (citation omitted). Second, even if Ms. Goldberg had not demonstrated actual malice, the qualified privilege does not apply because Defendants cannot demonstrate their videos—seen by thousands, *see Compl.* ¶¶ 40, 54—were disseminated to a limited, interested group. And third, Defendants' statements were made not in good faith but with malice. Kiselev and Burtsev statements under oath that they harbored no ill-will to Ms. Goldberg is not dispositive. *SDV/ACCI, Inc.*, 522 F.3d at 963. *See also* Goldberg Decl. ¶ 39. Simply put, Defendants had "no reasonable grounds for believing [the] statements to be true." *Id.* (citation omitted; alterations in original).

The evidence Defendants offer does not show that they made any efforts to verify any information about their assertions that Ms. Goldberg was a spy, leaked information to the Russian government, or that she was part of a Russian spy network that is being investigated by federal law enforcement. *Newton*, 930 F.2d 682–83. In fact, Defendants outright falsely state in their declarations that they never "labeled Plaintiff nor accused her of being a 'Kremlin agent' or a 'spy.'" [*See* ECF No. 28-1 ¶ 17; ECF No. 28-2 ¶ 22]. But they did. They accused her of providing information to the government, *Compl.* ¶¶ 25, 38, called her a "double agent," *id.* at ¶ 30, told their

14

viewers there was no need to speculate as to why the Russian government would answer her calls, *id.* at ¶ 29, called her "the Russian bear in the United States" while playing a Soviet spy T.V. show, *id.* at ¶ 39, and published a video in which they said she was engaged in a major espionage network that is being investigated by federal law enforcement, *id.* at ¶ 48. Charitably, Defendants accepted any negative rumor they heard at face value and repeated it; more realistically, they invented the lies themselves.

Defendants' declarations are rife with conclusory statements about good faith, but that cannot overcome the overwhelming evidence that they told thousands of people that Ms. Goldberg was a Russian agent who leaks asylees' information to the Russian government and is under criminal investigation in the United States. Not only that but their statements about Ms. Goldberg show that they harbored ill will towards her. Goldberg Decl. ¶¶ 17, 19, 39. The support for those statements about good will— vague testimony from an individual and an attorney—is not enough to show any efforts by Defendants to verify any of these statements. Instead, Defendants admit that their online campaign against Ms. Goldberg was about commerce and competition: after Ms. Goldberg filed suit, they told one of their viewers that her lawsuit was cover for her "sponsors" who were not making as much money because of Defendants. *Id.* at ¶ 30. And because their campaign is not an exercise in journalism or investigation, but disparaging a competitor for material gain, Defendants cannot supply any support for their statements about Ms. Goldberg's' federally investigated espionage network, nor can they concede the simple truth that they called her a spy. Instead, they continue to make up easily controvertible facts—like when they moved to California, whether Katkov knew they were in the United States, etc. The common interest privilege does not apply.

### b)      The fair report privilege does not apply.

Next, the Court should dispense with Defendants' arguments on the fair report privilege. Not only does the privilege not apply to any of the defamatory statements in

15

the Complaint, but the motion does also not identify any alleged defamatory statements that would be subject to the qualified privilege.

The statements Defendants do identify are not reports of "(A) a judicial, (B) legislative, or (C) other public official proceeding, or (D) of anything said in the course thereof, or (E) of a verified charge or complaint made by any person to a public official." Cal. Civ. Code § 47(d). Instead, the statements Defendants identify are:

- "information received from Kiselev's own attorney that the latter was approached by Katkov during one of the court sessions in Russia, claiming that he had evidence – provided by Plaintiff – of wrongdoing by Kiselev in his asylum case in the U.S."; and

- "Plaintiff's work with other asylees – specifically details disclosed by an asylee about Plaintiff's conduct before and during their asylum hearings."

(Mot. at 20:11-21.) Neither example, however, is a report of a public proceeding. Instead, there are instead stories about what someone involved in a public proceeding heard outside the proceeding. But none of the information was presented in public proceedings. *Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1082 (S.D. Cal. 2021) (for a report to be "fair" and "true" it must capture "the substance, the gist or sting, of the subject proceedings") (citation omitted). Thus, because the privilege only concerns whether a "report of the official proceedings itself is fair and true," *id.* (citation omitted), Defendants did not report on what occurred in any official proceedings and Ms. Goldberg's accusations do not even relate to what happened in those official proceedings, the Court should find that this argument is meritless.

      **c)**    **The litigation privilege and *Noerr-Pennington* doctrine do not apply.**

Under California law, the litigation privilege applies to a publication or broadcast made "in any judicial proceeding." Cal. Civ. Code § 47(b)(2). The privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of litigation, even though publication is made outside

16

the courtroom and no function of the court or its officers is involved." *Johnson v. JP Morgan Chase Bank DBA Chase Manhattan*, 536 F. Supp. 2d 1207, 1210 (E.D. Cal. 2008) (quoting *Silberg v. Anderson,* 50 Cal.3d 205, 212 (Cal. 1990)). The privilege applies to any communication: "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Id.*

Like the fair report privilege, the litigation privilege does not apply here for one simple reason: Defendants' videos and posts about Ms. Goldberg were not made "in judicial or quasi-judicial proceedings." Even if the proceedings Defendants' reference— about Katkov, for example—are somehow germane here, Ms. Goldberg does not assert that any statements about the Katkov case or Katkov are defamatory. Rather, she asserts that the lies about her being a spy, leaking personal information, and being under federal investigation are defamatory. Because the accused statements were not made in judicial or quasi-judicial proceedings, they are not privileged. Further, even if statements made after the proceedings or on the courthouse steps implicated the litigation privilege, these statements do not have "some connection or logical relation to" that litigation. *Johnson*, 536 F. Supp. 2d at 1210. Moreover, Defendants do not explain how their statements about Ms. Goldberg being investigated by federal law enforcement or part of a criminal spy ring relate to the Katkov litigation or advance or achieve the objects of that litigation. *Johnson*, 536 F. Supp. 2d at 1213 (statements made in "non-litigation context" are not subject to the privilege). In sum, the litigation privilege does not apply.

Defendants' invocation of the *Noerr-Pennington* doctrine is also unavailing. Under *Noerr-Pennington*, "[t]hose who petition the government for redress are generally immune from antitrust liability." *Catch Curve, Inc. v. Venali, Inc.*, 2008 WL 11334024, at *3 (C.D. Cal. Nov. 3, 2008) (quoting *Prof'l Real Est. Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993)). According to the Ninth Circuit, "[b]ecause the *Noerr–Pennington* doctrine grows out of the Petition Clause, its reach

17

extends only so far as necessary to steer the Sherman Act clear of violating the First Amendment." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005).

Defendants claim the doctrine applies and Ms. Goldberg must now demonstrate that the "sham" exception to the *Noerr-Pennington* doctrine applies. (Mot. at 21:18-24.). But that assumes that Defendants have established that the doctrine applies. They have not. Specifically, they claim that their defamatory statements relate to their petitioning activities before the government and courts. (*Id.*) But aside from explaining that their posts deal with immigration issues, they have not established that the specific accused statements in the Complaint relate to their petitioning efforts. Nor do they detail what those efforts are other than making videos for subscribers about immigration issues. Nor does the Complaint seek to prevent Defendants from speaking about these issues generally. Defendants have posted hundreds of videos about these issues and the only ones that are the subject of this litigation are those in which Defendants call Ms. Goldberg a spy who leaks information to the Russian government, and who is under criminal investigation by federal authorities.

Even so, Ms. Goldberg can readily satisfy the sham exception. That exception applies when a party's "efforts to influence government action are a 'sham' ...." *Dean v. Friends of Pine Meadow*, 21 Cal. App. 5th 91, 109 (Cal. Ct. App. 2018). "Such efforts amount to a sham when though 'ostensibly directed toward influencing governmental action, ... [they are] actually nothing more than an attempt to interfere directly with the business relationships of a competitor.'" *Id.* Here, Ms. Goldberg alleges in her Complaint that at least one reason why Defendants embarked on their unlawful smear campaign against her was to stay "at the top" amongst their perceived competitors, which included Plaintiff's employer. *Compl.* ¶ 15. Defendants wanted to drive business to themselves and away from Ms. Goldberg's employer, so they targeted her because she is her employer's face on social media. *Id.* at ¶ 16; Goldberg Decl. ¶ 30. Thus, even if the Court agreed that the doctrine was implicated in the first instance, the purpose of Defendants' acts was not government petition.

1
2

## II.    The Court Should Award Goldberg Her Attorneys' Fees Because Defendants' Anti-SLAPP Motion Is Frivolous

3    "If the court finds that a special motion to strike is frivolous or is solely intended

4    to cause unnecessary delay, the court shall award costs and reasonable attorney's fees

5    to a plaintiff prevailing on the motion, pursuant to Section 128.5." Cal. Civ. Proc. Code

6    § 425.16, subd. (c)(1). Under this provision, an award is mandatory when an anti-

7    SLAPP motion is frivolous. *Moore v. Shaw*, 116 Cal.App.4th 182, 198–99 (Cal. Ct. App.

8    2004). Subdivision (a) of section 128.5 states: "Every trial court may order a party, the

9    party's attorney, or both to pay any reasonable expenses, including attorney's fees,

10   incurred by another party as a result of bad-faith actions or tactics that are frivolous or

11   solely intended to cause unnecessary delay." Under section 128.5, an award may be

12   issued at a party's request or upon the trial court's own motion. Cal Civ. Proc. Code §

13   128.5, subd. (c).

14   Here, the Court should find that Defendants' motion to strike was frivolous.

15   Defendants invoked immunities and privileges that had no bearing on the accused

16   statements in the Complaint. They baselessly asserted that their statements were not

17   even about Ms. Goldberg. And they denied with no basis in evidence that their

18   statements explicitly or implicitly called Ms. Goldberg a Russian agent who leaks

19   personal information to the Russian government and who is under federal

20   investigation as part of a criminal network of spies. As set out in Ms. Goldberg's

21   declaration, many of the statements offered by Defendants under oath appear to be

22   obvious falsehoods, such as the motivation for their move to California, whether

23   Katkov knew that Kiselev had left for the United States, and even when Kiselev and

24   Burtsev started working together. *See* Goldberg Decl. ¶¶ 13–15, 24–29. For all these

25   reasons, the Court should award Ms. Goldberg her reasonable attorney's fees because

26   Defendants' motion is frivolous.

27
28

### III.   If the Motion is Granted, Plaintiff Should Be Given Leave to Amend

The Ninth Circuit has held that "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). Therefore, if the Court is inclined to grant the motion to strike, it should grant Plaintiff leave to amend her Complaint. *See Shahid Buttar for Congress Comm. v. Hearst Commc'ns, Inc.*, 2022 WL 1215307, at *12 (N.D. Cal. Apr. 25, 2022) (granting leave to amend "although it appears unlikely" that plaintiffs will be able to cure the deficiencies in their complaint").

### IV.   Conclusion

For all these reasons, the Court should deny Defendants' motion to strike the Complaint and should award Ms. Goldberg her reasonable attorneys' fees incurred in opposing this frivolous anti-SLAPP motion.

Dated: October 22, 2024

Respectfully submitted,

*/s/ James M. Slater*

Ethan Jacobs (SBN 291838)
ETHAN JACOBS LAW CORPORATION
100 Pine Street, Suite 1250
San Francisco, California 94111
Tel.: (415) 275-0845
ethan@ejacobslaw.com

James M. Slater (admitted *pro hac vice*)
SLATER LEGAL PLLC
2296 Henderson Mill Rd. N.E. #116
Atlanta, Georgia 30345
Tel.: (404) 458-7283
james@slater.legal

*Attorneys for Plaintiff Miriam Goldberg*

20